**UNITED STATES of America, Plaintiff,**

v.

**ONE PARCEL OF REAL ESTATE AT 11885 S.W. 46 STREET, MIAMI FLORIDA Together With All Appurtenances Thereto and All Improvements Thereon, Defendant.**

No. 88–1152–Civ–King.

United States District Court,
S.D. Florida.

June 5, 1989.

---

B.B. Allen, Asst. U.S. Atty., Miami, Fla., for U.S.

J.B. Harris, One SE Financial Center, Miami, Fla., for claimant.

Robert I. Targ, South Miami, Fla., for claimant Fuentes.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT

JAMES LAWRENCE KING, Chief Judge.

The court writes today to address yet another troubling aspect of the drug problem in the United States, and in South Florida in particular. A husband's greed has destroyed a family. To turn a quick dollar, the husband—unbeknownst to his wife—used the family home to facilitate a cocaine transaction. The fruits of his endeavors were swift but devastating. He is now serving a mandatory ten-year prison sentence, and his family's home has become the subject of this forfeiture action.

After reviewing the evidence presented at the non-jury trial, as well as the arguments of counsel, the court finds that the family home must be forfeited, at least in part. Because, however, the wife was an innocent owner, she is entitled to keep a one-half interest in the property. Pursuant to Fed.R.Civ.P. 52, the court now enters its findings of fact and conclusions of law.

### FINDINGS OF FACT

The real property sought to be forfeited here is located at 11885 S.W. 46th Street, Miami, Florida. The property's legal description is as follows:

West ½ of Tract 142 of Bird Road Farmsites, according to the plat thereof, recorded in Plat Book 46, at Page 3, of the Public Records of Dade County, Florida.

Ramon and Laura Fuentes, husband and wife, jointly owned the property as tenants by the entireties. They purchased the property in October 1975 for $30,000. At that time, the seller provided the Fuentes

with a purchase money first mortgage in the amount of $22,000. In June of 1983 this mortgage was satisfied.

In July of 1983, Ramon and Laura Fuentes entered into a construction loan agreement for improvements to the property and obtained a mortgage from Peninsula Federal Savings and Loan Association for $120,000. In October of 1986 the Fuentes financed their existing Peninsula Federal mortgage through the Southeast Mortgage Company and obtained a new mortgage in the amount of $71,650. The defendant property is still encumbered by this mortgage.

On April 11, 1988, Ramon Fuentes was arrested at the Fuentes property when he attempted to purchase a quantity of cocaine from undercover government agents. He was convicted after trial on July 29, 1988, in United States v. Ramon Fuentes, et al., Case No. 88–0268–Cr–Atkins. On September 19, 1988, Ramon Fuentes was sentenced to ten years imprisonment.

At the time of the undercover negotiations and arrest, Laura Fuentes was not on the property. She was working in a regular place of employment at the payroll office in the University of Miami where she has had a responsible position for a number of years. Laura Fuentes was not involved in any way in her husband's illegal activity. She was not arrested or charged. Moreover, the government presented no evidence in this case of Laura Fuentes' knowledge or suspicion of her husband's involvement with drug trafficking. Laura Fuentes testified credibly as to her lack of knowledge of her husband's narcotics activities and the testimony of the other witnesses corroborates this testimony.

### CONCLUSIONS OF LAW

■ The controlling statutory framework here is part of the ubiquitous forfeiture laws of the United States.[1] Pursuant to 21 U.S.C. § 881(a)(7), the forfeiture of any real property is permissible when probable cause exists to believe that the property was used to facilitate a violation of 21 U.S.C. § 802 *et seq.* that is punishable by more than one year's imprisonment. Probable cause for forfeiture is defined as a reasonable ground for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion. *See United States v. One Single Family Residence,* 699 F.Supp. 1531, 1534 (S.D.Fla.1988) (citing *United States v. A Single Family Residence,* 803 F.2d 625, 628 (11th Cir.1986)).

The particular mechanics of forfeiture are somewhat harsh. Pursuant to 21 U.S. C. § 881(h), all right, title, and interest in the property used to facilitate a drug transaction vests in the United States upon commission of the act giving rise to forfeiture. *See also United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890) (finding that the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed). The only relief provided to an owner of a forfeited property is the "innocent owner" defense found in 21 U.S.C. § 881(a)(7). If the owner can establish that the acts subjecting the property to forfeiture were committed without the knowledge or consent of the owner, the owner retains ownership in the property to the extent of that owner's interest. 21 U.S.C. § 881(a)(7).

■ The evidence at trial established probable cause for the forfeiture of the subject property. The real property was used to facilitate a prohibited narcotics transaction. Ramon Fuentes' arrest, indictment, and conviction established conclusively that the property was used to facilitate the possession and sale of cocaine. *See United States v. One Single Family Residence,* 699 F.Supp. at 1534.

■ Once probable cause is established, the burden shifts to the claimant to demonstrate by a preponderance of the evidence that she is an innocent owner. *See United States v. One 28–Foot International Vessel,* 741 F.2d 1319, 1322 (11th Cir.1984). She carries this burden by showing that

---

1. The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1355 and 2461.

she did not know of the property's connection to drug trafficking, and that she took every reasonable precaution to prevent the property's use in drug trafficking. *See Single Family Residence*, 803 F.2d at 629; *United States v. One Single Family Residence*, 699 F.Supp. at 1534.

■ Laura Fuentes has carried her burden of proof on the innocent owner defense. Mrs. Fuentes was uninvolved in, and unaware of, any events concerning her husband's participation in narcotics trafficking. Laura Fuentes testified that she never observed or was aware of any suspicious items kept in her house. She further testified that her husband did not engage in any activity or exhibit any behavior that would suggest he was involved in the purchase of drugs. Moreover, Laura Fuentes did all that reasonably could be expected to prevent the illegal use of her property and residence. She did not enjoy a lavish lifestyle or the benefit of unexplained income. In addition, the Fuentes purchased the property with personal savings and the proceeds from the sale of a business. Accordingly, Laura Fuentes is an innocent owner.[2]

Because Laura Fuentes is an innocent owner, she is entitled to retain her ownership interest in the property. The difficult question presented here is what type of ownership interest Laura Fuentes has in the defendant property. To resolve this question, the court must first determine when to calculate the ownership interest, and then determine the precise ownership interest.

The court must precisely determine the time frame in which to calculate the innocent owner's ownership interest. Logically, two relevant time frames arise. The first is before the commission of the offense subjecting the property to forfeiture. In this instance, the government's owner-ship interest has not yet arisen. Accordingly, in the case of multiple owners,[3] the government's subsequent intervention in the property does not determine the ownership interest. The second relevant time inquiry would be after the commission of the offense. In this case, the government's interest has vested, and in the case of multiple owners, the government's possession of the property necessarily assists in the determination of the ownership interest.

One court has taken the position that the proper time frame in which to determine the interest of the innocent owner is prior to the commission of the offense. *See United States v. One Single Family Residence*, 699 F.Supp. 1531, 1536 (S.D.Fla. 1988). This court believed that the innocent property owner's interest in the property is never subject to forfeiture. *Id.* at 1536. The court then went on to hold on exactly the same facts presented here that a wife could retain the entire property as the sole remaining tenant by the entirety. *Id.* at 1537–1538. Because of the relation back doctrine, the government enters the ownership picture upon the commission of the offense, a fact that would destroy the tenancy by the entirety under state law. A fair implication of the court's ruling, therefore, is that the relevant time frame to determine the innocent owner's interest is before the commission of the offense, for only in this time period can a tenancy by the entirety exist.

This decision, however, runs afoul of the statutory focus of the forfeiture laws. Both the relevant statute and case law center around the commission of the offense. *See* 21 U.S.C. § 881(a)(7); *see also United States v. $41,305 in U.S. Currency*, 802 F.2d 1339, 1346 (11th Cir.1986). Even the innocent ownership defense itself

---

**2.** This ruling is consistent with the position the government took in the sentencing of Ramon Fuentes before Judge Atkins. A transcript of the sentencing hearing reveals that the government informed Judge Atkins that the agents who arrested Ramon Fuentes believed that the family did not have any idea as to what Mr. Fuentes was doing in drug trafficking. *See* Transcript of Sentencing before The Honorable C. Clyde Atkins, United States District Judge, dated September 19, 1988, at pages 7–8.

**3.** The particular time frame to consider the innocent owner's interest really only arises in the multiple owner situation. If the property is owned only by one innocent owner, that owner retains his or her interest irrespective of this time frame analysis.

examines the owner's lack of knowledge and awareness of the felony commission. 21 U.S.C. § 881(a)(7). To be consistent with this focus, the court believes the innocent owner's interest in the property must be calculated at the time the offense is committed.

To determine the precise interest an owner has at this time, the court must refer to the state rules governing the creation of property estates. *See United States v. One Single Family Residence,* 699 F.Supp. at 1536.[4] Accordingly, the court will determine Laura Fuentes' ownership interest pursuant to Florida law.

Before Ramon Fuentes learned that crime doesn't pay, he and his wife owned the subject property as tenants by the entirety. A tenancy by the entirety is a legal fiction that creates a unique estate in property held jointly by husband and wife. *See Strauss v. Strauss,* 148 Fla. 23, 3 So.2d 727 (1941); *Quick v. Leatherman,* 96 So.2d 136, 138 (Fla.1957). Each spouse is deemed to own and control the whole of the entireties property, and their interests are not severable. *Id.* Any type of property, real, personal, or bank accounts, may be held by the entireties. *See Lacker v. Zuern,* 109 So.2d 180 (Fla. 3rd DCA 1959).

A tenancy by the entireties is based on the view that the husband and wife are one within the marital relationship. *Strauss v. Strauss,* 148 Fla. 23, 3 So.2d 727 (1941). Accordingly, neither spouse can, by his or her unilateral act, alienate, encumber or forfeit the property. *See Parrish v. Swearington,* 379 So.2d 185 (Fla. 1st DCA 1980). No creditor of one spouse may level against assets owned by the entireties to satisfy the debt of that individual spouse. *See Meyer v. Faust,* 83 So.2d 847 (Fla. 1955). Under Florida forfeiture law, this property cannot be forfeited where one spouse is innocent and without knowledge of the other's illegal conduct using the property. *See Smith v. Hindery,* 454 So.2d 663 (Fla. 1st DCA 1984).

Essential to the tenancy by the entirety are the coexistence of five essential requirements, known as unities. These requirements are unity of possession, unity of interest, unity of time, unity of title, and unity of marriage. *See Bechtel v. Bechtel,* 330 So.2d 217, 219 (2d Dist.1976). If any of these unities is broken, the tenancy by the entirety ceases. Accordingly, the tenancy by the entirety ends when both spouses convey the property to themselves as tenants in common or to one spouse individually, *see Pace v. Woods,* 177 So.2d 779 (Fla. 3rd DCA 1965), or the parties divorce, *see Quick v. Leatherman,* 96 So.2d 136, 138 (Fla.1957), or one of the spouses commits a felony, *see Ashwood v. Patterson,* 49 So.2d 848 (Fla.1951).

When the unities supporting the tenancy by the entirety are destroyed, a tenancy in common is created. *See Ball v. Ball,* 335 So.2d 5 (Fla.1976); *Ashwood v. Patterson,* 49 So.2d 848 (Fla.1951). Each spouse is deemed a tenant in common with a one-half interest in the property. *See Morgan v. Cincinnati Insurance Company,* 411 Mich. 267, 307 N.W.2d 53 (1981); *Lovell v. Rowan Mutual Fire Insurance Company,* 302 N.C. 150, 274 S.E.2d 170 (N.C.1981).

When considering that the relevant time frame to determine the interest under Florida law is after the commission of the offense, a tenancy by the entirety is destroyed when the crime is committed. Because the government is now in co-possession with the property, the unities of title, time, marriage, and possession are destroyed. Accordingly, the government and Laura Fuentes are deemed to have a one-half interest in the property. The government and Laura Fuentes are co-tenants.[5]

**4.** The court agrees with the decision in *One Family Residence,* 699 F.Supp. at 1536, to apply state law as opposed to a federal common law. The application of state rules does not discriminate against the government or violate the dictates of the forfeiture statutes. *Id.*

**5.** The court is not unmindful of the mortgage on the property. Nevertheless, the court does not desire to order the sale of the property because it believes the government and Laura Fuentes may be able to work out some convenient arrangement out of court. If they cannot, and one party, as a co-tenant under Florida law, moves for sale or partition, the property will be sold and the proceeds will be paid to satisfy the innocent mortgagor first, then the remaining

This court's decision differs from that of *United States v. The South 23.19 Acres of Land,* 694 F.Supp. 1252 (E.D.La.1988). In that case, the court analogized the government's forfeiture interest to that of a debt. The court believed the forfeiture interest was a debt owed to the government arising from the husband's commission of the crime. *Id.* at 1253–1254. The court then examined under Louisiana law whether the government as a debtor of the husband could foreclose upon the property owned as a tenancy by the entirety. *Id.* at 1254.

This analysis misconstrues the essential purposes behind the forfeiture statute. The forfeiture statute is an act of supremacy. Upon commission of the specified offense, the United States divests all title, interest, and possession rights under state law in the property. This right has no characteristics of a debt, for the forfeiture is essentially an *in rem* mechanism. As an act of supremacy, no state law issues can necessarily arise unless the federal statute specifically mandates their incorporation in the analysis.

Consistent with this opinion, the court ORDERS AND ADJUDGES as follows:

1. The interest of Ramon Fuentes in the defendant property is hereby forfeited to the United States.

2. Laura Fuentes has satisfied the innocent ownership defense.

3. The government and Laura Fuentes are tenants in common in the defendant property, each owning one-half share of the property.

DONE and ORDERED.

proceeds would be divided between Fuentes and the government.