UNITED STATES of America Plaintiff–Appellant,

v.

CERTAIN REAL PROPERTY LOCATED AT 2525 LEROY LANE, WEST BLOOMFIELD, MICHIGAN, and Leah Liza Marks, Defendants–Appellees.

No. 88–2238.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1989.

Decided Aug. 8, 1990.

Peter A. Caplan (argued), Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellant.

Martin W. Bordoley, Southfield, Mich., Martin S. Baum, Colista, Adams, Dettmer & Palmer, Detroit, Mich., Stephen J. Bock (argued), Liberson, Bloom, Bloom & Bock, Southfield, Mich., for defendants-appellees.

Before MERRITT, Chief Judge, KRUPANSKY, Circuit Judge, and GRAHAM, District Judge.*

GRAHAM, District Judge.

This is an appeal by the Government from a judgment of the United States District Court for the Eastern District of Michigan awarding the entire proceeds from the sale of property seized pursuant to 21 U.S.C. §§ 853 and 881 to the claimant-innocent owner. The issues presented concern the operation of these federal drug forfeiture statutes upon the interests of an innocent spouse in real property held as a tenancy by the entirety under Michigan law.

On February 26, 1987, an indictment was returned in the Eastern District of Michigan against Mitchell Dennis Marks. The indictment charged Mitchell Marks with

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

one count of conspiracy to possess with intent to distribute cocaine on or about December 15, 1985 through December 17, 1985 and one count of distribution of cocaine on or about December 15, 1985. The indictment also contained a forfeiture count pursuant to 21 U.S.C. § 853(a)(2), which alleged that Mr. Marks had an interest in real property located at 2525 Leroy Lane, West Bloomfield, Michigan which he used or intended to use to commit or facilitate the commission of a violation of the Controlled Substances Act. The real property in question was seized pursuant to a warrant issued by a United States Magistrate on February 12, 1987.

Mr. Marks was convicted by a jury and a judgment order imposing sentence was filed on June 6, 1988. The judgment also ordered the forfeiture of Mr. Marks's interest in the real property. On July 15, 1988, Leah Liza Marks, claimant-appellee and wife of Mitchell Marks, filed a petition in the criminal case for a determination of her interest in the real property, as well as a claim to the property.

In the interim, on April 17, 1987, the Government filed a civil complaint for forfeiture pursuant to 21 U.S.C. § 881(a)(7) against the real property. On May 8, 1987, Leah Marks filed an answer to the complaint, and on May 15, 1987, she filed a claim of interest in the real property. The civil and criminal forfeiture proceedings were subsequently consolidated.

In the proceedings before the district court, the parties stipulated that the real property known as 2525 Leroy Lane was owned by Leah Marks with her husband, Mitchell Marks, as tenants by the entirety. By agreement of the parties dated April 29, 1988, the real property was sold and the proceeds of the sale were designated as a substitute res in which the parties were deemed to have the same interest as they had in the real estate. The Government and Leah Marks also entered into a stipulation of facts on November 2, 1988, in which the Government agreed that Leah Marks was an "innocent owner" within the meaning of the forfeiture provisions.

By order entered on November 7, 1988, the district court awarded judgment to claimant Leah Marks. The district court concluded that Leah Marks had a legal interest in the property "rather than" her husband for purposes of 21 U.S.C. § 853(n)(6)(A), and was an innocent owner under 21 U.S.C. § 881(a)(7), so as to avoid forfeiture of the property. The district court further found that claimant's entireties interest constituted an interest in the property as a whole, and that her innocent owner status operated to avoid forfeiture as to the entire property. For the following reasons, we vacate the judgment of the district court.

The Government proceeded in this case under both the criminal and civil Title 21 forfeiture provisions. The criminal forfeiture statute, 21 U.S.C. § 853, provides in relevant part:

(a) Property subject to criminal forfeiture

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

\*  \*  \*  \*  \*  \*

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, ...

The term "property" in this section includes real property. 21 U.S.C. § 853(b)(1). When an order of forfeiture has been entered under § 853, a third party asserting a legal interest in the property may petition the court for a hearing to adjudicate the nature of his or her interest in the property. 21 U.S.C. § 853(n). Under 21 U.S.C. § 853(n)(6)(A), relief from forfeiture may be obtained where the petitioner establishes by a preponderance of the evidence that:

the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right,

title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section ...

The provisions for civil forfeiture are found in 21 U.S.C. § 881. Title 21, § 881(a)(7) provides for the forfeiture to the United States of:

All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

■■■ The criminal forfeiture provisions of 21 U.S.C. § 853 authorize an *in personam* action against a defendant in a criminal case, and forfeiture in such a case is imposed as a sanction against the defendant upon his conviction. *United States v. $39,-000 in Canadian Currency*, 801 F.2d 1210 (10th Cir.1986). Civil forfeiture, on the other hand, is an *in rem* proceeding wherein the subject property is treated as being itself guilty of wrongdoing. *United States v. One 1976 Mercedes Benz 2805*, 618 F.2d 453 (7th Cir.1980).

The Government's first argument on appeal is that Leah Marks lacks standing under § 853(n)(6)(A) to contest the criminal forfeiture. The Government contends that she lacks a legal interest in the property which was vested in her "rather than the defendant or was superior to" the legal interest of the defendant, as required by that section.

■■■ At the time of the illegal acts which rendered the real property subject to forfeiture, Leah Marks and her husband owned the real property as tenants by the entirety under Michigan law. Tenants by the entirety, who must be husband and wife, hold under a single title with right of survivorship. *Matter of Grosslight*, 757 F.2d 773 (6th Cir.1985); *Sanford v. Bertrau*, 204 Mich. 244, 169 N.W. 880 (1918). Neither husband nor wife acting alone can alienate any interest in the property, nor can the creditors of one levy upon the property. *Matter of Grosslight*, 757 F.2d at 773.

■■■ A husband and wife holding by the entireties do not hold as joint tenants. "A joint tenancy implies a seisin *per my et per tout*, while an estate in entirety implies only a seisin *per tout*." *In re Appeal of Lewis*, 84 Mich. 340, 341, 48 N.W. 580 (1891).

A Michigan court in *Rogers v. Rogers*, 136 Mich.App. 125, 356 N.W.2d 288, 292–93 (1984) described the entireties estate as follows:

In Michigan real property law, tenancies by the entireties enjoy an ancient and hoary tradition. The usual and durable method for a husband and wife to hold real estate has been as tenants by the entireties. The classic basis for a tenancy by the entireties was the concept that "the husband and wife are but one person in the law". In a true tenancy by the entireties, each spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship. When real property is so held as tenants by the entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held. Neither the husband nor the wife has an individual, separate interest in entireties property, and neither has an interest in such property which may be conveyed, encumbered or alienated.

One incident of an estate by the entireties is that the survivor, whether husband or wife, is entitled to the whole and such right cannot be defeated by a conveyance by one spouse to a stranger. Traditionally, tenancies by the entireties could only be created by a written instrument of conveyance, which produced

unity of persons, time, title, interest and possession. (Footnotes omitted).

■ Thus, under Michigan law, Leah Marks had not only an indivisible interest in the entireties property, but also a survivorship interest which would entitle her to sole ownership of the property upon her husband's death. *Rogers*, 356 N.W.2d at 293. Her survivorship interest constitutes a legal interest in the real property which was vested in her "rather than the defendant" for purposes of 21 U.S.C. § 853(n)(6)(A). Claimant Leah Marks has standing under that section to contest the criminal forfeiture of the real property in question.

The remaining issues presented by the Government's appeal concern the impact of the forfeiture statutes on Leah Marks's interest in the real property. The Government has stipulated that Leah Marks is an innocent owner within the meaning of those provisions. However, the Government contends that she is entitled, at most, to one half of the proceeds from the sale of the property.

A central question presented by this case is the role which should be accorded state law in the federal forfeiture scheme. The Government argues that state property law should not be determinative, but rather that the federal courts should develop a federal common law of forfeiture to govern the treatment of property interests. The United States Supreme Court has recognized the authority of the federal courts to create consistent nationwide rules in the face of conflicting state laws. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). However, a nationwide rule may not be appropriate where Congress has not specifically adopted a federal rule of law, and where the incorporation of state law as the federal rule of decision will not hinder the administration of a federal program. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

In *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), the Supreme Court addressed the application of Texas property law to an action to obtain judgment on a Small Business Administration loan. Under Texas law, the respondent wife of the business owner and co-signer of the loan note was deemed to lack the capacity to contract with the Small Business Administration, and thus she could not be held liable for the note. The Supreme Court recognized that state law could be overridden where federal programs or actions must be uniform throughout the United States, as in the case of *Clearfield Trust Co., supra,* which involved the remedial rights of the United States with respect to federal commercial paper. *Yazell*, 382 U.S. at 354, 86 S.Ct. at 507–08. The court in *Yazell* went on to note that the single loan transaction was not a nationwide act of government warranting the adoption of a uniform rule of law. *Id.*, 382 U.S. at 348, 86 S.Ct. at 504–05. Likewise, state law rules have been adopted as the federal law to be applied despite the consequent diversity in the rights and obligations of the United States in the various states. *Id.*, 382 U.S. at 354–57, 86 S.Ct. at 507–09. Finally, the Court held that in the absence of specific congressional action, state laws governing family property arrangements would be overridden by federal courts only where clear and substantial interests of the national government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied. *Id.*, 382 U.S. at 348–52, 86 S.Ct. at 504–07.

As noted above, the Government proceeded in this case under both the civil and criminal forfeiture provisions in Title 21. We see no language in the civil forfeiture provisions which would mandate the application of a federal common law of property. We conclude that recognition of state laws governing property rights does not contravene the federal forfeiture scheme, and that the application of state law is the most appropriate method of determining the interest of an innocent owner under 21 U.S.C. § 881(a)(7). We note that state laws governing tenancies by the entirety have been applied by federal courts in determining the interests available for the satisfac-

tion of a federal tax lien, where the tax lien statute, like the forfeiture statutes, contained no definition of property rights. *Cf. Cole v. Cardoza,* 441 F.2d 1337 (6th Cir. 1971).

In interpreting the criminal forfeiture scheme, we must reconcile the apparent clash of §§ 853(a) and (n). Subsection (a) provides that a person convicted of certain felony drug offenses shall forfeit to the United States, "irrespective of any provision of State law", any of his property which was used to commit or facilitate the commission of such offenses.

By drafting this forfeiture statute to operate "irrespective of any provision of State law," it would at first appear that Congress supplanted, albeit inadvertently, state-determined property rights with a case-by-case development and application of a federal common law of property whenever state property laws seems to limit the Government's absolute access to assume ownership of property by forfeiture. But rather than read the language of § 853(a) in a vacuum, we consider it in conjunction with § 853(n), which overrides whatever impact § 853(a) might have on the status of state-created property rights.

Under § 853(n), a third party asserting a legal interest in the property may petition the court for a hearing to adjudicate the nature of his or her interest in the property. Specifically, § 853(n)(3) provides that the third party's petition must "set forth the nature and extent of the petitioner's *right, title,* or *interest* in the property, [and] the time and circumstances of the petitioner's *acquisition of the right, title, or interest....*" (emphasis added). Further, under 21 U.S.C. § 853(n)(6)(A), a relief from forfeiture may be obtained where the petitioner establishes by a preponderance of the evidence that:

> the petitioner has *a legal right, title or interest* in the property, and such *right, title or interest* was *vested* in the petitioner rather than the defendant or was superior to any *right, title, or interest* of the defendant at the time of the commission of the acts which gave rise to the

forfeiture of the property under this section.... (emphasis added).

Only a strained reading would permit us to infer that § 853(n) describes rights, titles, or interests acquired under a spontaneous federal common law of property. Property interests have long been acquired and defined by state law; it was with those interests in mind that Congress drafted provisions for the protection of innocent third parties. Decades before Congress enacted § 853, state-defined property interests, many of which are still held by the original grantees or remaindermen, had been acquired throughout the various states. As a result, logic leads us to conclude that Congress's repeated use of clear language in § 853(n) necessarily survives the "irrespective of State law" provision in § 853(a). When Congress provided for the forfeiture of property "irrespective of State law", it intended solely that state law offer no protection to the convicted defendant's interests in that property. The provisions of § 853(a) were never meant to restrict the property interests of an innocent owner.

The Government argues that a federal common law of forfeiture is needed to effectuate the goals and purposes of the federal forfeiture scheme. Forfeiture statutes serve the ends of law enforcement by preventing further illicit use of the property and by imposing an economic penalty, thereby rendering illegal behavior unprofitable. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 687, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974). The drug forfeiture provisions aid law enforcement efforts in the area of illegal drugs. *United States v. One 1977 Cadillac Coupe DeVille,* 644 F.2d 500 (5th Cir.1981).

The Government suggests that drug dealers will circumvent the impact of the forfeiture statutes by investing their assets in property such as entireties property which may be shielded from forfeiture by reason of the nature of the property interest under state law. However, such evasive actions would be undermined by the heavy burden placed upon claimants to prove their innocent ownership status.

The dissent expresses concern that preservation of the remainder interest in an entireties estate paves the way for "artful planning on the part of drug-dealers." Under Michigan law, however, a late conveyance—engineered after beginning the criminal enterprise in order to protect the property from creditors or forfeiture—would be thwarted by the relation-back provision, under which the Government's interest in the property relates back to the time of the commission of the crime. 21 U.S.C. § 853(c). Creation of an entireties estate just prior to commission of the crime could, as in a bankruptcy context, be challenged in certain instances as a fraudulent conveyance. *See United States v. One Single Family Residence*, 699 F.Supp. 1531 (S.D. Fla.1988); *Dunn v. Minnema*, 323 Mich. 687, 36 N.W.2d 182 (1949).

In addition, forfeiture statutes are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise. *United States v. United States Coin & Currency*, 401 U.S. 715, 721, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971). Here, a penalty has been imposed upon Mr. Marks, who has forfeited his interest in the property. The protection of the interest of an innocent owner as that interest is defined under state law is not inconsistent with federal forfeiture policy. The dissenting opinion notwithstanding, § 853(*o* ), which states that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes," is uninstructive. The protection of innocent owners is no less remedial than official efforts to "curb the cascading nationwide drug trade." This is not a case where clear and substantial interests of the United States will suffer major damage if state law is applied. *Yazell*, 382 U.S. at 352, 86 S.Ct. at 506–07.

■ Each forfeiture proceeding is based upon unique circumstances. Forfeiture proceedings implicate property rights which have traditionally been measured in terms of state law. *Yazell, supra.* The forfeiture provisions of 21 U.S.C. §§ 853 and 881 contain no rules of law for defining the scope of an innocent owner's property interests, and thus Congress has not expressly preempted this area with specific definitions or guidelines. We decline to formulate a uniform federal rule of decision, and conclude that it is appropriate to refer to state law in determining the nature of the property interest claimed by a third party in forfeiture proceedings under 21 U.S.C. §§ 853(n) and 881(a)(7).

■ The remaining issues concern the effect of the forfeiture provisions on the entireties interest of Leah Marks under Michigan law. We must determine what interest Mrs. Marks retains in the property and what interest the Government gains in the property as the result of the forfeiture of Mr. Marks's interest. The Government relies on various theories to support its position that the Government should recover at least one half of the property. The Government cites *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) as being analogous to this case. *Rodgers* involved the impact of 26 U.S.C. § 6321, which creates a tax lien on property in favor of the United States, upon homestead property as defined by Texas law. The Court held that the homestead rights under Texas law did not protect the property from *in rem* proceedings under 26 U.S.C. § 6321, and formulated a possible mechanism for compensating the nondelinquent spouse for her interest in the property using the economic equivalents for a life estate. *Id.,* 461 U.S. at 692–700, 103 S.Ct. at 2142–46. However, the Court's decision was based on its broad interpretation of § 6321, which permitted the Government to "subject *any property,* of whatever nature, of the delinquent, or *in which he has any right, title, or interest,* to the payment of such tax or liability." *Id.,* 461 U.S. at 692, 103 S.Ct. at 2142 (emphasis provided by the Supreme Court). This provision allowed the lien to attach to the property of the delinquent taxpayer regardless of the nature of third party interests in the property. The Court further recognized, *Id.,* 461 U.S. at 703, n. 31, 103 S.Ct. at 2147–48, n. 31 that tenancies by the entirety posed a problem distinct from the issue of homestead rights.

■ Under Michigan law, entireties property may be levied upon by the State for nonpayment of real estate taxes on the real property itself. *See Robbins v. Barron*, 32 Mich. 36 (1875). However, entireties property may not be attached to satisfy the personal tax liability of a single spouse. *Cole v. Cardoza*, 441 F.2d at 1343; *United States v. Nathanson*, 60 F.Supp. 193 (E.D.Mich.1945).

In contrast to the statute involved in *Rodgers*, the *in rem* provisions of 21 U.S.C. § 881(a)(7) specifically provide that *"no property* shall be forfeited under this paragraph, *to the extent of* an interest of" an innocent owner. (Emphasis supplied). Under 21 U.S.C. § 853(n)(6)(A), the interest of a third party in the property may render "the order of forfeiture invalid *in whole or in part."* (Emphasis added). Under these provisions, the interest of a third party may be so extensive as to include the entire property, thereby defeating the Government's interest completely. Thus, the analysis in *Rodgers* does not support the Government's position in this case.

The Government relies on *United States v. One Parcel of Real Estate*, 715 F.Supp. 355 (S.D.Fla.1989), where the court reasoned that the Government became co-owner of the property by reason of the relation back vesting provision, 21 U.S.C. § 881(h), at the time of the illegal act, thereby destroying the unities of title, time, marriage and possession and converting the tenancy by the entirely into a tenancy in common.

Under the reasoning in *One Parcel of Real Estate*, the Government would assume ownership of the entire property at the commission of the illegal act, thereby terminating the entireties estate. However, this interpretation of the forfeiture statutes operates to reduce what would otherwise be the spouse's interest in the entire property under state law. Under 21 U.S.C. § 881(a)(7), "no property shall be forfeit under this paragraph, to the extent of an interest of" an innocent owner.

The criminal forfeiture statute also has a relation back provision which vests title of the property in the United States upon the commission of the illegal act. *See* 21 U.S.C. § 853(c). However, that statute contains a provision which permits a petitioner to establish that he or she has a legal interest in the property which renders the order of forfeiture invalid in whole or in part. 21 U.S.C. § 853(n)(6)(A). The purpose of the relation back provision in § 853(c) is to allow the Government to reach property which has been transferred to third parties to avoid the impact of forfeiture, *United States v. Reckmeyer*, 836 F.2d 200 (4th Cir.1987), not to deprive innocent owners of their legitimate interest in the property.

Reading the forfeiture statutes as a whole, there is no indication that Congress intended that the relation back provisions deprive an owner of part or all of his or her entireties interest in property acquired prior to the commission of the illegal acts. We conclude that the relation back provision of § 881(h) and the analogous provision in § 853(c) did not result in conversion of the entireties estate owned by Leah Marks and her husband into a tenancy in common. While the federal forfeiture scheme permits the Government to assume Mr. Marks's interest in the property, it may not by virtue of the forfeiture alter the essential characteristics of the entireties estate. To sever the entireties estate in favor of a tenancy in common among Mrs. Marks and the Government would not merely prevent a windfall to Mrs. Marks, as suggested by the dissent, but would vest the Government with a greater interest than that held by the individual wrongdoer whose interests the Government has acquired, and would not adequately compensate Mrs. Marks for her survivorship interest. Rather than converting the estate into a tenancy in common, it is necessary to examine the nature of Leah Marks' interest as it existed up to the initiation of forfeiture proceedings.

The Michigan law previously discussed indicates that Leah Marks has an indivisible interest in the whole property held by the entireties. Under Michigan law, the individual interest of a tenant by the entirety is the functional equivalent of a life estate with a right of survivorship. The

survivorship interest is in the nature of a remainder triggered by the death of either spouse, and, necessarily, the survivorship of the other spouse. The occurrence of the contingency converts the survivor's life estate to fee simple absolute. Consequently, only if Mrs. Marks were to predecease Mr. Marks would the latter realize his survivorship interest.

If the marriage terminates in divorce, the entireties estate is converted into a tenancy in common by operation of statute. *See* M.L.C.A. § 552.102. Here, Mr. and Mrs. Marks are still married, and therefore, the entireties estate is still intact under state law, even though by operation of the federal forfeiture statutes, Mr. Marks no longer has any interest in the property. The entireties estate may also be destroyed through a joint conveyance of the property by husband and wife, but here, Mrs. Marks has agreed to no such conveyance.

We find that *Lewis v. Homeowners Insurance Co.,* 172 Mich.App. 443, 432 N.W.2d 334 (1988), relied upon by the Government, has no impact upon the entireties estate in this case. In *Lewis,* the court held that the wife could recover half of the insurance proceeds after the entireties property was destroyed through arson committed by her husband. However, the result in that case was reached through an interpretation of the insurance contract, and was not based on the nature of the wife's interest in the property.

In light of the parties' stipulation to treat the cash proceeds of the forced sale as though they retained the same qualities as entireties property, the Government may properly acquire only the interest which Mr. Marks held as cotenant by the entireties. However, the Government cannot occupy the position of Mr. Marks in the entireties estate, since the estate is founded on marital union, and the Government obviously cannot assume the role of spouse to Mrs. Marks. By acquiring Mr. Marks's interest in the entireties estate, the Government is precluded from obtaining Mr. Marks's interest in the property unless and until Mrs. Marks predeceases her husband or the entireties estate is otherwise terminated by dissolution of the marriage or joint conveyance. However, we do not agree with the district court's finding that the entire property vested in Mrs. Marks by reason of the forfeiture. Instead, we conclude that the interest acquired by the Government is most analogous to the position occupied by a judgment creditor of one spouse under Michigan law.

The exact nature of the parties' rights would be more readily determinable if the real property here had not been sold. Mrs. Marks would be entitled to live in the house during the duration of the tenancy, and the Government would have a lien on the property to the extent of the value of Mr. Marks's interest which would prevent Mrs. Marks from obtaining the entire proceeds upon the sale of the property. Here, the real property has been sold, and the district court must determine on remand how to manage the fund of money in such a way as will protect the Government's interest as a judgment creditor, while at the same time permitting Mrs. Marks the use of that property consistent with her interest as a tenant by the entireties.

We note that during the pendency of this appeal, the judgment of the district court in *United States v. One Single Family Residence,* 699 F.Supp. 1531 (S.D.Fla.1988) was affirmed by the Eleventh Circuit Court of Appeals. *See United States v. One Single Family Residence,* 894 F.2d 1511 (11th Cir. 1990). The Eleventh Circuit determined that under Florida law, the interest of the innocent spouse in entireties property was not subject to forfeiture by reason of the criminal activity of her husband, and that federal law as contained in 21 U.S.C. § 881(a)(7) did not operate to preempt state law in that regard. The court stated, *Id.* at 1516, that "using Florida law to define what property interest each of the Aguileras has, we find that no interest exists in the subject property which can be forfeited to the government at the present time." The Eleventh Circuit went on to note, 894 F.2d at 1516, n. 6:

Nothing would prevent the government from attempting to execute or levy on its interest should the entireties estate be

altered by changes in circumstances or by court order. That is, we do not rule out the possibility that if the United States filed a lis pendens against the property, the government might acquire in a later forfeiture proceeding Mr. Aguilera's interest in the property should he divorce his spouse, should Mrs. Aguilera predecease him, or should their interests be transmitted into some divisible form by their actions or by law. In such case, their interests would become distinct and separable so that forfeiture of his interest in the property would not affect her rights.

Our opinion in the present case is consistent with the conclusions reached by the Eleventh Circuit. The distinguishing feature in the case before the Eleventh Circuit is that the real property in question had not been sold, and therefore whatever future interest the Government might have in the property would be protected by the filing of a lis pendens. Here, however, the real property has been converted to a fund of money which could easily be dissipated. Therefore, it becomes necessary in this case to hold the money in escrow, thereby establishing in effect a lis pendens in order to protect the Government's interests in anticipation of the occurrence of some event which may result in the vesting of the Government's interest in the proceeds of the property.

While we leave the determination of the precise scope of the Government's interest under Michigan law to the district court, we note some cases which may be instructive. As previously noted, the judgment creditors of one spouse may not levy against entireties property through a forced sale. *Matter of Grosslight*, 757 F.2d at 773. The creditors of the husband alone cannot reach the husband's share of proceeds from a foreclosure sale of the entireties real estate, *Muskegon Lumber & Fuel Co. v. Johnson*, 338 Mich. 655, 62 N.W.2d 619 (1954), or rents from property held by the entireties, *Peoples State Bank of Pontiac v. Reckling*, 252 Mich. 383, 233 N.W. 353 (1930); *Battjes Fuel & Bldg. Material Co. v. Milanowski*, 236 Mich. 622, 211 N.W. 27 (1926). However, although

Michigan law precludes a forced sale of property to enforce a judgment lien, we have found no cases which would preclude the attachment of a creditor's lien on one spouse's interest which could be satisfied to the extent of that spouse's interest upon the termination of the entireties estate. Each tenant by the entirety is entitled to share equally in the rents and profits derived from the entireties property. Thus, it may be that Mrs. Marks would be entitled to half of the interest from the fund of money. Consistent with the prohibition against unilateral alienation of the entireties property by one tenant, Mrs. Marks would not be able to reach her share of the principle of the fund unless or until the entireties estate terminated through the death of Mr. Marks, upon which she would be entitled to the entire fund, or through other termination of the entireties estate, at which time Mrs. Marks would be entitled to one half of the fund. The Government would be entitled to the entire fund if Mrs. Marks predeceased Mr. Marks, and to one half of the fund upon some other termination of the estate such as a termination of the marriage or an agreement between Mrs. Marks and the Government to terminate the tenancy.

We likewise leave to the discretion of the district court the determination of how to best manage and invest the fund in such a way as to protect the interests of both Mrs. Marks and the Government.

Of course the parties are entitled to compromise and settle their respective interests by agreeing among themselves upon a division of the fund. Because Mr. Marks's interest in the property has been forfeited to the Government, the interested parties for purposes of settlement are the Government and Ms. Marks. The court would commend to the parties the services of its settlement office under the supervision of Mr. Robert Rack, who may be able to assist the parties in effectuating a fair settlement and a fair division of the fund of money in question.

For the foregoing reasons, the judgment of the district court is hereby vacated, and this case is remanded to the district court

for further proceedings consistent with this opinion.

KRUPANSKY, Circuit Judge, dissenting.

The majority, in ruling that the government becomes, in effect, a judgment creditor against the entireties estate of Mitchell and Leah Marks (appellee) by virtue of Mitchell's conviction for a narcotics offense, ignores the compelling public interest underlying the federal criminal penalty of forfeiture intended by Congress as an immediate, certain, and severe deterrent of uniform implementation calculated to curb the cascading nationwide drug trade. The majority's result, which by operation of law converts the government-forfeitee into a life-long judgment creditor of the defendant-forfeitor, suspends the ultimate resolution of rights as compelled by the forfeiture pending the death of one of the spouses. While this may be the accommodation that has been achieved at state law between the customary rights of a judgment creditor seeking enforcement of a judgment and the traditional insulation of the entireties estate from the debts of a single spouse, it finds no support in either the federal criminal or civil forfeiture provisions, 21 U.S.C. §§ 853 and 881, and, moreover, is in direct conflict with the congressional commitment to repress the narcotics enterprises that are destroying the moral fiber of the country. The suggested result, in failing to strike a proper balance between an innocent spouse's interest in jointly owned property and the interest of the government in punishing convicted drug dealers through forfeiture of property acquired or used in the furtherance of their illicit drug initiatives, marks an undesirable evisceration of the congressional declarations underlying the forfeiture laws.

The government argues persuasively that the overwhelmingly coercive policies of criminal and civil forfeitures would be critically eroded if the efficacy of forfeiture orders were made to depend upon disparate state property laws. The majority's disposition—which represents an overweaning solicitude for state property law—amounts to a public announcement to criminal defendants that their property will be subjected to a wide disparity of treatment in different states, and that, therefore, the penal consequences of their conduct will vary from jurisdiction to jurisdiction, despite their violation of *federal* laws.[1] The better result is to preempt state law with a federal common law of forfeiture whenever, as here, the property interest of the innocent third party is defined by state law with less than certainty.

In reaching its disposition, the majority relies heavily on the absence of express language in 21 U.S.C. § 853 to support the result urged upon this court by the government. Section 853 is admittedly silent as to its application to real property held as an estate in the entireties. On its face, the statute does not clearly direct any of the results variously espoused by either the government or by the appellee. It does not mandate that a forfeiture be vacated upon the petition of an innocent spouse who holds real property with the criminal defendant by the entireties; it does not require that the innocent spouse be completely divested of her interest in real property held in an estate by the entireties; nor, admittedly, does it unequivocally endorse the result suggested herein—partial and *instant* divestiture of the convicted spouse's interest in property held by the entireties as a means of equitably accommodating the interests of both the government and the innocent spouse.

"The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct.

1. The majority suggests that the "relation back" provision of the criminal forfeiture statute, 21 U.S.C. § 853(c), by which the government may invalidate a conveyance and compel the forfeiture of property that has been transferred to third parties *after* "commission of the act giving rise to the forfeiture," obviates any concern for artful planning on the part of drug dealers. The majority's reliance on this provision is misplaced in light of the sophistication of many of these specialized criminals, who are sagacious enough to insulate their property from forfeiture *before* commission of the act giving rise to the forfeiture.

1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). In conducting this inquiry, however, "we are not guided by a single sentence [of the statute] or member of a sentence, but look to the provisions of the whole law, *and to its object and policy."* *Massachusetts v. Morash,* 490 U.S. 107, ——, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (emphasis added).

This is not a case where the statute readily provides an answer to the question. Accordingly, the court must look beyond the language of the statute and resort to traditional tools of statutory construction. The majority concededly undertakes a serious effort to interpret the forfeiture statute, but in doing so completely ignores the paramount congressional interest in effectuating a uniform, immediate, certain, harsh and efficacious sanction against those who elect to profit from a venture as pernicious as trading in drugs. In reaching this result, the majority's sole reference point extrinsic to 21 U.S.C. § 853 is the classical approach to an estate by the entireties as defined by state law. To conclude that this rather arcane and archaic definition of marital property rights, with all of its attendant obstacles (including insulation of the estate from the unilateral debts of one spouse), resolves the issues joined in the instant case with any clarity is to find guidance in the least promising of several sources extraneous to the statute.

Logic dictates that the most reasonable source of outside guidance inheres in the persuasive policies underlying federal forfeiture schemes.[2] Where the federal policies in favor of a given result are overpowering, and the countervailing state rule of law so imperfectly defined, logic and sound judgment direct the evolution of a federal common law addressing the disposition of forfeited marital property which preempts contrary provisions of the myriad spousal estates recognized in the various states. The Supreme Court has not—as the majority opinion would imply—rendered state domestic property law insusceptible to the traditional principles under which federal law is given preemptive effect:

> These principles are not inapplicable here simply because real property law is a matter of special concern to the States: "The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962).

*Fidelity Federal Savings & Loan Assoc. v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1981).

21 U.S.C. § 853, by its terms, permits and even invites this approach. In subsection (a) of the enactment, forfeiture is mandated "irrespective of any contrary provision of state law...." 21 U.S.C. § 853(a). In subsection (n), however, under which appellee initiated her petition to modify the forfeiture order, the degree to which forfeiture is amended in favor of innocent third parties tacitly relies on the extent of that third party's interest in the property as defined by state law. Herein is created an *internal tension, resolution of which is* guided by subsection (*o*), which provides that section 853 be liberally construed so as to accomplish its remedial purposes.[3] Thus, incorporated into the statute is a common rule of statutory construction: when the plain language is inadequate to

---

2. Many familiar canons of statutory construction have "long been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text so far as the meaning of words fairly permits so as to carry out in particular cases the general expressed legislative policy." *Securities and Exchange Comm'n v. C.M. Joiner L. Corp.,* 320 U.S. 344, 350–51, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943), cited with approval in *Herman & McLean v. Huddleston,* 459 U.S. 375, 388 n. 23, 103 S.Ct. 683, 690 n. 23, 74 L.Ed.2d 548 (1983).

3. "Remedial purposes," as the term is applied to the *entirety* of section 853, is an inherently ambiguous phrase. One can perceive numerous "remedial purposes" incorporated into the provisions of section 853, not the least of which are subsection (a)'s remedial purpose of deterring crime through threatening drug dealers with loss of their assets, and subsection (n)'s remedial purpose of protecting the interests of innocent third parties.

resolve a given issue, resort, in the first instance, to a construction that will serve the statute's purposes.[4] Read *in pari materia*, these three subsections require that: 1) state law define the scope of a petitioner's interest; 2) state law not undermine the intent and purpose of forfeiture; and 3) any difficulties in construing the various provisions of the statute should be resolved so as to serve its "remedial purposes." These provisions permit reconciliation of the competing interests involved in the instant case in a manner that is not accomplished by the majority's disposition.

Federal criminal forfeiture policies demand that defined property of Mitchell Marks, the convicted narcotics dealer, be subject to the sanction of forfeiture. Solicitude for appellee's interests as an innocent spouse counsels against completely divesting her of her interest in the property. The statute, inconsistently perhaps, mandates both that state law not interfere with forfeiture and that state law be consulted to define the rights that must be preserved in third parties. When, as in this case, state law defines those rights ambiguously, it stands to reason that a preemptive federal common law be developed to define the rights resulting from the guilty spouse's conviction with certainty, immediacy, and some degree of spontaneous penal force.

This may seem harsh, but the compelling nature of these policies and the likelihood and acceptability of severe results has been underscored and approved in two recent decisions of the Supreme Court in which the forfeiture provisions were upheld against constitutional challenges. *United States v. Monsanto*, —— U.S. ——, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989); *Caplin & Drysdale, Chtd. v. United States*, —— U.S. ——, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). In the *Monsanto* case the Court rejected the argument that assets which an accused had designated for the retention of legal counsel of his choice were implicitly excepted from the statute's enumeration of forfeitable property. The Court admitted that the plain meaning of the statute could conceivably result in "harsh" consequences, making it difficult if not impossible for the accused to retain the counsel of his choice—possibly forcing resort to court-appointed counsel—but that the forfeiture statute "mandates" such harsh results. 109 S.Ct. at 2665.[5]

In the companion *Caplin & Drysdale* case, the Court addressed substantially the same issue in constitutional terms, concluding that, under the sixth amendment, a criminal defendant could be deprived of assets intended for the retention of legal counsel of his choice. In language that affirmed in no uncertain terms the paramount character of the policies underlying the federal forfeiture provisions, the Court concluded "that there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged

---

**4.** The purpose underlying the statute is reflected in its legislative history. The criminal forfeiture provision was part of a bill "designed to enhance the use of forfeiture, and in particular, the sanction of criminal forfeiture, as a law enforcement tool in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking." 1984 U.S. Code Cong. & Admin. News 3182, 3374. As Judge Greenberg of the Third Circuit recently remarked in his dissent to that court's denial of a petition for rehearing en banc in a case involving the meaning of the "innocent owner" exception to forfeiture, Congress clearly intended "to make forfeiture one of the strongest weapons in the government's arsenal in the war against drug trafficking." *United States v. Property Known as 6109 Grubb Road*, 890 F.2d 659, 663 (3rd Cir.1989) (Greenberg, J., dissenting).

**5.** This court has not avoided interpreting the criminal forfeiture statute in a manner that produces admittedly "harsh" results. *United States v. Campos*, 859 F.2d 1233, 1238 (6th Cir.1988) ("We recognize that this interpretation of the forfeiture statute [denying unsecured creditors cognizable rights in forfeited property] *mandates a harsh result, but it is a result frequently mandated by forfeiture procedures*.") (emphasis added). Other courts likewise have not been reluctant to visit the hardships of forfeiture on innocent spouses. *See, e.g., United States v. One Parcel of Real Estate*, 715 F.Supp. 355, 356–57 (S.D.Fla.1989), in which the court noted that "[t]he fruits of [the convicted husband's] endeavors were swift but devastating," and that the future rights of the parties were subject to drastic alteration through the "somewhat harsh" operation of the forfeiture statutes.

to be forfeitable to pay for their defense." 109 S.Ct. at 2655.

Accordingly, I would conclude that absent meaningful language in the statute to the contrary, it was certainly erroneous for the district court in the case at bar to award an innocent spouse a full, unencumbered fee simple interest in the property. Such a gift constitutes a windfall, conferring on the innocent spouse more than she had before her husband exposed the property to forfeiture by engaging in his illicit drug enterprise. It is equally in error for the panel majority to place the government in the position of a life-long judgment creditor, thus holding realization of its rights, and of the rights of the spouse, in abeyance pending the demise of one of the parties to the marital relationship. Moreover, the majority places upon the district court not only the burden of formulating a plan for the investment and management of the res over a protracted period of time, but also the time-consuming burden of monitoring the fund in a fiduciary capacity for the balance of the Marks's lives.

In support of its conclusions, the panel majority cites to a footnote in the Eleventh Circuit's recent opinion in *United States v. One Single Family Residence*, 894 F.2d 1511 (11th Cir.1990), in which that court under circumstances somewhat similar to those presented in the case at bar conjectured that the government could "file[ ] a lis pendens against the property" noticing the public of an inchoate, undefinable potential cloud on title to the realty. *See id.* at 1516–17 n. 6. This is a forfeiture in name only, devoid of practical consequence. The forfeiture in *One Single Residence* was nominal because, as the majority fails to note, the decision awarded the entire estate to the innocent spouse, and the reference to the recording of a lis pendens was, in essence, a palliative sop to the government. Specifically, the Eleventh Circuit, invoking convoluted reasoning, concluded that the innocent spouse in an entireties estate stands to lose *nothing* in the wake of the defendant spouse's conviction, because her interest in the estate theoretically extended to the entire property. Conveniently ignoring the very tangible

ownership interest of the convicted spouse (which, too, extended to the entire property), the Eleventh Circuit concluded that "no interest exist in the subject property which can be forfeited to the government...." *Id.* at 1516. The district court in the case at bar, treating the proceeds from the sale of the subject property as a substitute res, arrived at the same conclusion as the Eleventh Circuit in *One Single Family Residence, yet the majority disposition in the instant case vacates the district court's judgment.* Thus, the majority inconsistently expresses approval of the Eleventh Circuit's resolution of the issue confronting this appeal, yet reverses the district court's disposition. Moreover, the Eleventh Circuit's lis pendens obiter, as does the majority disposition herein, effectively places a final resolution of the real property rights between the owners of the entireties estate and the government in abeyance pending divorce or death. It is also relevant to note that the Eleventh Circuit's suggestion that the government record a lis pendens constitutes a resolution that is even more indefinite and uncertain than the majority's disposition herein.

The equitable resolution of the uncomfortable conflicts exposed in this case is neither a judgment lien nor a lis pendens, but rather a severance of the entireties estate in favor of a flexible tenancy in common between appellee and the government. At once, this solution serves the overriding national need for immediacy, certainty, uniformity, and efficacy in forfeiture, equitably mitigates the pain that appellee must inevitably suffer in the wake of her husband's criminal transgressions, and resolves the matter with the immediacy, certainty, and finality that is to be expected in the wake of a criminal conviction.

I would, for the reasons expressed herein, reverse the district court and remand the case for final disposition not inconsistent with this opinion.