UNITED STATES of America, Plaintiff-Appellee,

v.

Lloba ALONSO, Jose Escandel, and Alberto Gomez, Defendants-Appellants.

No. 80–5899.

United States Court of Appeals, Eleventh Circuit.

April 12, 1982.

Bierman, Sonnett, Beiley & Shohat, P. A., Edward R. Shohat, Benedict P. Kuehne, Miami, Fla., for defendants-appellants.

Kenneth W. Lipman, John F. Peyton, Jr., Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY and FAY, Circuit Judges, and EDENFIELD *, District Judge.

PER CURIAM:

This appeal turns on the validity of a warrantless stop and boarding of an American vessel by customs agents in customs waters. Following the stop, approximately 15,720 pounds of marijuana were discovered on defendants' boat, sufficient to convict defendants of attempt and conspiracy to import marijuana. They argue the customs agents needed a search warrant in order to stop and board their boat. Rejecting the argument that the knowledge that defendants' boat might contain contraband prevented the authorities from making a documentary stop under 19 U.S.C.A. § 1581(a), without a search warrant, we affirm.

During the late afternoon of July 1, 1979, Captain Richter of the United States Customs Patrol received information from his supervisor that at least two vessels reportedly loaded with marijuana would be coming into the Marathon, Florida area. The vessels were supposed to come from the Sombrero Light which is on the reef line. Captain Richter was given the names of two suspect vessels: the DON JOSE and the TONY JUNIOR.

Captain Richter and other officers proceeded toward the Sombrero Light in a Florida Marine Patrol boat, investigating various vessels along the way. About 11:15 p. m. they observed two lobster boats traveling together in a northerly direction toward the United States, within several yards of each other.

The customs' boat intercepted one lobster boat, the WOLF, approximately five to six miles off the coast, the other lobster boat continuing on its course. The officers boarded the WOLF, identified themselves, and requested the boat's papers. Upon entering the cabin for the papers, the officers smelled the strong odor of marijuana and

* The Honorable Newell Edenfield, United States District Judge for the Northern District of Georgia, sitting by designation. This case is being decided by a quorum due to the death of Judge Edenfield on December 27, 1981. 28 U.S.C. § 46(d).

saw material which looked like marijuana through an open hatch. Placing the crew members under arrest, Captain Richter returned to the Marine Patrol boat and pursued the other lobster boat. A few minutes later he saw the boat's name, the TONY JUNIOR.

Captain Richter boarded the TONY JUNIOR and asked the captain for the vessel's documents. They went to the cabin where Captain Richter noticed a strong marijuana odor and saw marijuana through an open forward door. He then arrested the individuals on board, the defendants in this case. This appeal involves only those individuals arrested on the TONY JUNIOR.

■ The stop occurred in customs waters. 19 U.S.C.A. § 1401(j). Customs officers have broad statutory authority to stop and board vessels in customs waters without a warrant:

> Any officer of the customs may at any time go on board of any vessel . . . within the customs waters . . . and examine the . . . documents . . . and examine, inspect, and search the vessel . . . and every part thereof and any person, . . . or cargo on board, and to this end may . . . stop such vessel . . ., and use all necessary force to compel compliance.

19 U.S.C.A. § 1581(a). In spite of the unlimited language of the statute, the Customs' authority is restricted by the reasonableness requirement of the Fourth Amendment. *United States v. Serrano*, 607 F.2d 1145, 1147 (5th Cir. 1979), *cert. denied*, 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980); *United States v. Conroy*, 589 F.2d 1258, 1268 (5th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). The law is clear that the statute authorizes a documentary stop without even a modicum of suspicion and that such stops are constitutionally permissible. *United States v. Freeman*, 579 F.2d 942, 945 (5th Cir. 1978). *Accord, United States v. Ruano*, 647 F.2d 577 (5th Cir. 1981); *United States v. Kleinschmidt*, 596 F.2d 133, 135 (5th Cir.), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). *See United States v. Warren*, 578 F.2d 1058, 1064–65 (5th Cir.

1978) (en banc) (no need for Coast Guard to have any particularized suspicion to stop a vessel for a document and safety check under 14 U.S.C.A. § 89(a)), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).

■ Defendants argue, however, that the officers here were investigating a suspected crime which had targeted the TONY JUNIOR by the time of the stop, so the stop was not "morally neutral." They argue that customs officials who are investigating crime have less constitutional authority than those who are making random stops. This "morally neutral" argument has surfaced in other briefs before this Court. We reject the argument out of hand. There is a difference between the stop and boarding of a vessel and the search of a vessel. The "morally neutral" language was picked up from use in a *search* context, *United States v. Williams*, 617 F.2d 1063 (5th Cir. 1980) (en banc), and is not useful at all in determining whether a *stop* is constitutionally permissible. Regardless of its application were there a *search* of a vessel, a point we need not decide, the following argument from defendants' brief has no support in the law of this Circuit concerning customs *stops* in customs waters: "This was not a routine documents and administrative check that was 'morally neutral' but instead was very definitely an intrusive stop to uncover evidence of suspected wrongdoing."

As to the Coast Guard, we have consistently held that the mere fact that boarding officers suspect customs and narcotics violations does not taint the validity of a safety and documentation stop on the high seas. *United States v. Jonas*, 639 F.2d 200 (5th Cir. 1981); *see United States v. Hillstrom*, 533 F.2d 209, 211 (5th Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977). The Coast Guard statute, 14 U.S.C.A. § 89(a) has been held analogous to the Customs statute, 19 U.S.C.A. § 1581(a). *United States v. Freeman*, 579 F.2d 942, 946 (5th Cir. 1978); *see United States v. Williams*, 617 F.2d 1063, 1081 (5th Cir. 1980) (en banc).

Suspicion or knowledge of customs violations could not infect an otherwise legal stop because some cases have seemed to require a reasonable suspicion of criminal activity to justify a stop in customs waters. *United States v. Ruano*, 647 F.2d 577 (5th Cir. 1981).

There was no search conducted in this case. Once the officers were on board the contraband was in plain view. The cases suggesting a constitutional proscription of a pretextual safety inspection that in fact was a search of the private areas of the vessel are not applicable. *See, e.g., United States v. Mazyak*, 650 F.2d 788 (5th Cir. 1981); *United States v. Ruano*, 647 F.2d 577 (5th Cir. 1981); *United States v. Jonas*, 639 F.2d 200 (5th Cir. 1981); *United States v. Peabody*, 626 F.2d 1300 (5th Cir. 1980); *United States v. Baker*, 609 F.2d 134, 139–40 (5th Cir. 1980); *United States v. Erwin*, 602 F.2d 1183 (5th Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980), *reh. denied*, 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 251 (1980); *United States v. Warren*, 578 F.2d 1058 (5th Cir. 1978) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).

There is a serious question whether the officers had probable cause, as argued, to believe the TONY JUNIOR contained contraband until the WOLF had been stopped. These defendants had no Fourth Amendment interest in the WOLF. Facts developed on stopping the WOLF which would only then give probable cause to believe that the TONY JUNIOR carried contraband, together with the exigent circumstances, would insulate the subsequent stop of the TONY JUNIOR from constitutional defect. *See United States v. Weinrich*, 586 F.2d 481 (5th Cir. 1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).

Defendants were charged with and convicted of conspiracy to import marijuana and attempt to import marijuana in violation of 21 U.S.C.A. § 963. They claim they committed only a single offense since their actions involved violation of a single statute and the charges arose from the same trans-

action. This issue was decided contrary to defendants' argument in *United States v. Anderson*, 651 F.2d 375 (5th Cir. 1981). Reviewing the same statute, the Court held that since conspiracy to import and attempt to import each require proof of different facts they are separate crimes. 651 F.2d at 378–79. This Court is bound by former Fifth Circuit law. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

AFFIRMED.