UNITED STATES of America,
Plaintiff-Appellee,

v.

ONE (1) 1982 28' INTERNATIONAL
VESSEL, etc., Defendant-Appellant,

Odd "Skip" Hope, et al., Defendants.

No. 83–5575.

United States Court of Appeals,
Eleventh Circuit.

Sept. 17, 1984.

Gary R. Gromet, Fort Lauderdale, Fla., for plaintiff-appellant.

Robert E. Sanders, Covington, Ky., pro se.

Linda Collins Hertz, Robert A. Rosenberg, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HENDERSON and CLARK, Circuit Judges, and ATKINS *, District Judge.

PER CURIAM:

The plaintiff United States commenced forfeiture proceedings against the defendant, one 28′ international vessel, in the District Court for the Southern District of Florida, pursuant to 21 U.S.C. § 881. Following a one-day bench trial, judgment was entered in the plaintiff's favor, and the defendant appeals.

On or about October 20, 1981, one George Jackson entered into a contract with Colosso Boat Corporation for the custom modification and purchase of a 1982 twenty-eight foot international craft, to be completed "as soon as possible." By early January, 1982, Jackson had completed payments on the boat, but the boat was not yet ready for delivery. Testimony at trial indicates that the delay was due to problems associated with engine performance. The craft was registered in Jackson's name as of January 22, and Jackson, among others, operated the boat in the course of attempts to identify and remedy the trouble. With Jackson's knowledge and permission, in late January a Colosso representative hired Odd "Skip" Hope, who might best be described as an independent contractor, to test the engines.

On February 5, pursuant to an order from the United States Coast Guard to blockade Port Everglades, Florida and stop all entering vessels for a routine check, Guardsman James LeGasse stopped the defendant vessel and its operator, Skip Hope. Prior to boarding, LeGasse testified that the vessel employed a searchlight in a manner that in LeGasse's view was intended to make it appear as if the vessel were shrimping; yet no shrimp nets were visible. Hope stated that he was merely examining the engines.

LeGasse recalled that he had stopped this same vessel the previous month, following a Coast Guard alert that a drug drop-off may have occurred earlier that evening in the Bahamas. Hope was operating the boat on that occasion as well, and told LeGasse that he was returning from the Bahamas; the boat was boarded and inspected at that time, and released.

Returning to February 5, after announcing his intentions to board, LeGasse accompanied the defendant vessel to the Coast Guard station in Ft. Lauderdale where the boarding took place. LeGasse was unable to account for all the space on board as required by Coast Guard boarding procedure. With the assistance of the United States customs service, LeGasse found a drill with a screwdriver attached aboard the vessel, noted that the screws affixed to the deck looked worn, and after pulling out these screws, lifted up the deck to reveal what appeared to be a gas tank that was empty and moveable. A gauge located on the tank registered half full. When he moved the tank, a compartment became apparent. Upon inspection of this empty compartment, LeGasse discovered what appeared to be marijuana residue, consisting of two leaves and a twig, stuck in the crevice of a board. A field test was conducted, and the substance tested positive but was destroyed in the test. The bilge water also tested positive for marijuana, but was not preserved. No arrests were

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

made as a result of the stop and board incident.

The appellant first objects to the warrantless search of the vessel as contrary to the fourth amendment proscription of unreasonable searches and seizures. Under the authority of 19 U.S.C. § 1581,

> Any officer of the customs may at any time go on board of any vessel ... within the customs waters ... and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

This statute has been construed to authorize a documentary stop "without even a modicum of suspicion." *United States v. Alonso*, 673 F.2d 334, 336 (11th Cir.1982). A similar statute has been interpreted to extend like authority to the Coast Guard. 14 U.S.C. § 89(a); *Alonso*, 673 F.2d at 336; *United States v. Freeman*, 579 F.2d 942, 946 (5th Cir.1978). "The mere fact that boarding officers suspect customs and narcotics violations does not taint the validity of safety and documentation stop on the high seas." *Alonso*, 673 F.2d at 336.

■■■■ In light of the foregoing authority, appellant concedes that the initial stop and boarding of the craft was proper, but argues that the more intrusive search of the lower deck was improper. We disagree. Irrespective of whether Hope was in fact attempting to deceive observers into believing that he was shrimping, it would be reasonable for one in Guardsman Le-Gasse's position to suspect as much. When that initial suspicion was coupled with LeGasse's subsequent discovery that he had previously stopped this same vessel under similar circumstances the previous month, his decision to investigate further was amply warranted. *See, e.g., United States v. Gollwitzer*, 697 F.2d 1357, 1362 (11th Cir.1983) (reasonable suspicion of criminal activity created in part by incident the previous day involving a similar vessel). Further investigation revealed a drill with a screwdriver bit, a deck sealed by screws that appeared worn, and space beneath the deck that could not be accounted for. These facts combined to furnish the reasonable suspicion needed to do "a limited inspection for obvious customs violations by viewing the interior of large, potentially cargo-bearing cavities of cargo or fishing vessels and pleasure boats whose construction reveals a capacity to conceal significant amounts of cargo." *United States v. Whitmire*, 595 F.2d 1303, 1313 (5th Cir. 1979). In this case, that inspection was conducted in as minimally intrusive a manner as possible. *See United States v. Andreau*, 715 F.2d 1497 (11th Cir.1983). The inspection of the lower deck and the discovery of the mock fuel tank warranted further suspicion still, which in turn culminated in the discovery of the marijuana residue giving rise to the forfeiture. Under these circumstances, we are satisfied that the customs inspection procedure at issue here did not contravene the fourth amendment. *United States v. Villamonte-Marquez*, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983).

Appellant argues next that even if the search of the defendant vessel did not violate the fourth amendment, the evidence admitted at trial was insufficient to warrant forfeiture. Title 49 U.S.C. § 782 provides in part:

> Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited.

Section 781 in turn provides that:

> (a) It shall be unlawful
> (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft.

In order to establish a forfeiture under the foregoing statutory provisions, "the government need show only that there was probable cause that one of the statutes had been violated. (citation omitted). The 'sweeping statutory language' requires forfeiture where any contraband has been

physically present in the conveyance." *United States v. One 1976 Porsche 911S, etc.*, 670 F.2d 810, 812 (9th Cir.1979); *see also United States v. One 1978 Chevrolet Impala*, 614 F.2d 983 (5th Cir.1980). In this case, the evidence indicated contraband was physically present and was being transported in the vessel. There can be no question that marijuana constitutes contraband under the statute, *United States v. One 1976 Porsche*, 670 F.2d 810, 812 (9th Cir.1979), and to "transport" for purposes of the forfeiture statute means only to carry or convey; the statute is silent as to the purpose for such transportation, and so no particular purpose need be shown. 548 F.2d 8.

The appellant nevertheless argues that the government failed to establish probable cause, in light of the "immeasurably" small quantity of marijuana found on board the vessel. This argument must fail. The courts have uniformly held that a vehicle is subject to forfeiture no matter how small the quantity of contraband found. *One 1976 Porsche*, 670 F.2d at 812; *see also United States v. One 1957 Oldsmobile*, 256 F.2d 931, 933 (5th Cir.1958). For purposes of forfeiture, positive results in a field test furnish sufficient proof as to the existence of contraband. *United States v. One 1972 Wood, 19' Custom Boat*, 501 F.2d 1327, 1329–30 (5th Cir.1974). The very fact that a sufficient quantity of marijuana was present to permit testing defeats appellant's suggestion that the amount involved was immeasurable. We therefore conclude that the government met its burden of showing probable cause to believe that the vessel in question had been used in violation of 49 U.S.C. § 781.

The defendant further argues that even if probable cause to believe that the vessel was used to transport contraband is established, George Jackson had no knowledge of such use, and a wholly innocent owner cannot properly have his property forfeited. In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court acknowledged the existence of an innocent owner defense in forfeiture proceedings, but in so doing placed a heavy burden of proof upon such an owner:

> It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. (citations omitted). Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.

*Id.* at 689, 94 S.Ct. at 2094–95.

The defendant has failed to meet its burden in this case. In its case in chief, the defendant introduced the deposition of Odd "Skip" Hope, and the testimony of Robert Sanders (the assignee of George Jackson's interest in the vessel), Jenny Hope (Odd "Skip" Hope's wife), and William Hill (the Colosso Boat sales representative responsible for the sale of the defendant vessel to Jackson). George Jackson was neither deposed nor called as a witness at trial, and at oral argument counsel proffered no reason for Jackson not being called to testify. As it is, the record is barren of information as to what if anything Jackson had done between October 1981 and February 1982 to "prevent the proscribed use of his property"; consequently, the defendant has failed to demonstrate that Jackson did "all that reasonably could be expected." The failure of Jackson to testify that he was uninvolved in Hope's use of the vessel at the time and that he had limited Hope's use to testing the engines and then to submit himself to cross-examination weighs heavily in our deciding this case in favor of the government. *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983 (5th Cir.1980) ("when the Government's evidence in a forfeiture proceeding is uncontradicted, the scope of the inquiry on appeal is whether the

Government's evidence established probable cause for the institution of the suit").

 As a final matter, the appellant contends that the due process clause of the fifth amendment foreclosed the government from introducing testimony as to evidence of contraband found on board the vessel, in light of the government's failure to preserve the contraband. In *United States v. Nabors*, our circuit rejected a proposed rule that testimony as to the nature of material tested by a government witness must inevitably be excluded when the material has been mistakenly destroyed. 707 F.2d 1294 (11th Cir.1983). "Rather than a per se rule of exclusion, the test in this circuit focuses on 'the materiality of the evidence, the likelihood of mistaken identification, and the reasons for its nonavailability to the defense.'" *Id.* at 1296–97.

Certainly, evidence of marijuana on board the vessel was material to the outcome of this case. However, the appellant has made no coherent attempt at demonstrating that there was any likelihood of mistaken identification. The customs agent who conducted the field test in this case testified that he had been employed by customs for ten years, and had conducted "hundreds" of field tests for marijuana. He further testified without controversion elsewhere in the record that on no occasion had his field test results been contradicted by subsequent laboratory tests.

As a final matter, there is no indication that the failure to preserve the bilge water or marijuana fragment was intentional or in bad faith. Defendant does not dispute this conclusion with respect to the bilge water, but insists that the customs officer intentionally destroyed the marijuana fragment in the field test. While it is true that the officer intentionally conducted a field test, which necessitated the destruction of the sample tested, that is not to say that he intentionally destroyed evidence. To the contrary, conducting a field test must be regarded as an evidence-generating procedure.

While preservation of material evidence is obviously a preferred practice, the failure to preserve the bilge water and marijuana leaf fragment in this case did not foreclose testimony with respect to their discovery, and does not compel reversal.

AFFIRMED.