UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL ESTATE LOCATED AT 6640 S.W. 48th STREET, MIAMI, DADE COUNTY, FLORIDA, etc., Defendant.

No. 91–0443–CIV.

United States District Court,
S.D. Florida.

Sept. 15, 1993.

John F. O'Donnell, Ft. Lauderdale, FL, for claimants.

Vivian Rosado, Asst. U.S. Atty., Miami, FL, for plaintiffs.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING CLAIMANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

HIGHSMITH, District Judge.

This Cause comes before this Court on Plaintiff United States of America's ("United States") motion for summary judgment, filed May 20, 1992; and Claimant Jose A. Larraz, Sr.'s cross-motion for summary judgment, filed June 5, 1992. This Court has jurisdiction of this cause of action, pursuant to 28 U.S.C.A. §§ 1345, 1355, and 1395 (West 1976 and Supp.1993).

### STANDARD OF REVIEW

In deciding a summary judgment motion, a court must apply the standard stated in *Fed. R.Civ.P.* 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard the Eleventh Circuit has stated that:

The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982) (citations omitted). Moreover, "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–480[, 64 S.Ct. 232, 234–235, 88 L.Ed. 239] (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512.

### UNDISPUTED FACTS

The defendant property is a residential parcel of land and appurtenant dwelling originally owned by Reinaldo Luis and Maria Del Carmen Moguel de Mendicuti, as joint tenants. In April 1990, United States Customs Service Agent Edward J. Kacerosky received information from confidential informants regarding Luis' alleged smuggling activities. The confidential informants, working under

Kacerosky's supervision, attended a series of meetings with Luis at the defendant property during May, June, and July of 1990. At these meetings, the informants learned that Luis was arranging maritime transportation for organizations seeking to smuggle large quantities of cocaine from the Caribbean into South Florida.

On August 8, 1990, in Luis' presence at the defendant property, one of Luis' associates offered a $15,000 cash deposit to the confidential informants to entice them to travel to Aruba to obtain over 1500 kilograms of cocaine. The confidential informants accepted the $15,000 and departed for Aruba. On September 7, 1990, Luis was arrested at the defendant property. Two days after his arrest, Luis met with claimant, attorney Jose Larraz, Sr., to discuss the possibility of legal representation. Larraz, Sr. informed Luis that he would represent Luis in the criminal matter for $50,000.00. On September 10, 1990, Luis was formally charged with conspiring to import 1500 kilograms of cocaine, in violation of 21 U.S.C. § 963.

On September 12, 1990, United States Magistrate Judge Linnea R. Johnson held a pre-trial detention hearing. At this hearing, the court was informed of the conspiratorial meetings that took place at the defendant property. Larraz, Sr.'s son and law partner, Jose Larraz, Jr., acted as Luis' attorney at this hearing. Larraz, Sr. was not present at the hearing, but Larraz, Sr. stipulated at his deposition that he was aware of the government's detailed allegations concerning drug-related meetings at the defendant property during or prior to the September 12, 1990 hearing. Consequently, it is undisputed that Larraz, Sr. possessed actual knowledge of the government's accusations against Luis

prior to the transfer of the defendant property.

Later that day, Luis executed a warranty deed, prepared by Larraz, Sr., transferring his interest in the defendant property to Mendicuti, the co-owner of the defendant property. Mendicuti then executed a promissory note payable to Larraz, Sr., and a mortgage deed, both in the amount of $50,-000.00 in favor of Larraz, Sr. Both the warranty deed and the mortgage deed were recorded in the Dade County Property Records on September 13, 1990.[1] A short time later, Luis was convicted of conspiracy to import 1497 kilograms of cocaine in violation of 21 U.S.C. § 963.

On March 5, 1991, the United States filed this civil forfeiture action against the defendant property. A default judgment was entered against Mendicuti on December 4, 1991, as owner of record, because she failed to file a claim to the defendant property. Larraz, Sr. filed a claim against the defendant property for $50,000 on December 19, 1991.

## DISCUSSION

### I. Civil Forfeiture Law

Congress enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Drug Control Act") to attack the growing menace of drug abuse by providing, among other things, more effective law enforcement tools in the war on drugs. Brad A. Chapman and Kenneth W. Pearson, Comment, *The Drug War and Real Estate Forfeiture Under 21 U.S.C. § 881: The "Innocent" Lienholder's Rights*, 21 Tex. Tech.L.Rev. 2127, 2130 (1990). Specifically, the Drug Control Act provides modern pros-

---

1. The Court notes that the circumstances surrounding the property transfer and execution of the mortgage are, at a minimum, highly suspicious. Larraz, Sr. claims that the $50,000 mortgage from Mendicuti was payment for legal services rendered to Luis. Luis, however, testified that Larraz, Sr. tricked Mendicuti into executing the mortgage. He claims that Larraz, Sr. asked Mendicuti to sign mortgage documents that were written in English and were not explained to her, despite the fact that she does not read or speak English. (Deposition of Luis, D.E. # 40).

Luis also testified that shortly thereafter, he sought to dismiss Larraz, Sr. because Larraz, Sr. would not see him or file any papers with the court on his behalf. Then, when Luis learned that Larraz, Sr. had acquired a mortgage interest on the house from Mendicuti, several members of Luis' family went to Larraz, Sr.'s residence to retrieve a boat, which had also been given as collateral for Larraz, Sr.'s attorney's fees. A fight ensued, and Luis' family members were arrested. Luis allegedly tried to reach a settlement with Larraz Sr., but Larraz, Sr. refused to accept less than $50,000.

ecutors with a potent weapon by authorizing the civil forfeiture of drug-related property. *See* 21 U.S.C. § 881. This forfeiture provision applies to controlled substances, containers of controlled substances, records associated with illegal drug transactions, and conveyances used to violate the controlled substance statutes. *Id.* The Drug Control Act also permits warrantless seizure of property subject to forfeiture if the United States demonstrates probable cause to believe that the property was intentionally used to help facilitate a controlled substance transaction. *Id.*

■ In 1984, Congress amended the Drug Control Act through the passage of the Crime Control Act of 1984 ("1984 Act"). The 1984 Act contains three critical changes in the law of forfeiture. First, it expands the scope of 21 U.S.C. § 881 by expressly allowing the forfeiture of real property used or intended to be used to commit a drug crime.[2] Second, the 1984 Act attempts to codify the common law relation-back · doctrine. 21 U.S.C. § 881(h). The statutory relation-back doctrine provides, in pertinent part:

> All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

21 U.S.C.A. § 881(h) (West 1993). Finally, the 1984 Act adds a statutory exemption that protects an innocent owner's interest in forfeited property. 21 U.S.C.A. § 881(a)(6) & (a)(7) (West 1993). This provision allows an innocent owner to · avoid forfeiture "to the extent of an interest of an owner, by reason of any act or · omission established by that owner to have been committed or omitted without the knowledge or consent of the owner." 21 U.S.C.A. § 881(a)(7) (West 1993).

In 1993, the United States Supreme Court conducted its first detailed examination of the forfeiture provisions of the 1984 Act. *United States v. 92 Buena Vista Ave.,* —

U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (plurality opinion). In *Buena Vista,* the Court held that: (1) The innocent owner defense is not limited to bona-fide purchasers, but may apply to donees; and (2) The statutory relation-back doctrine vests ownership of a defendant property in the United States at the time of entry of the final order of forfeiture, with title relating back to the time of the commission of the underlying offense. *Id.* at ——, ——, 113 S.Ct. at 1134, 1137. Prior to this decision, courts had interpreted the time of vesting as occurring at the time of the offense, thereby precluding persons who obtained an interest in a forfeited property after the commission of the underlying offense from filing innocent owner claims. *See United States v. 3181 S.W. 138th Place,* 778 F.Supp. 1570, 1572 (S.D.Fla.1991). In pre-*Buena Vista* cases, therefore, ownership never vested in these post-illegal act transferees because ownership of the property had already vested in the United States at the moment of the illegal act.

### II. Application of Forfeiture Law Doctrine to Larraz' Claim

■ The first step in a forfeiture proceeding, pursuant to § 881, is for the United States to establish probable cause that the claimant's property was used to violate 21 U.S.C. § 881(a)(7). *United States v. 900 Rio Vista Blvd.,* 803 F.2d 625, 628 (11th Cir. 1986). Once probable cause is proven, the burden shifts to the claimant to prove an innocent owner defense. *United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884, 888 (11th Cir.1989). To succeed, the claimant must first demonstrate that he has standing to file a claim to the property. *United States v. 5000 Palmetto Drive,* 928 F.2d 373, 375 (11th Cir.1991). The claimant may meet this burden by showing that he has an ownership interest in the defendant property. *United States v. $4,253,000.00 in U.S. Currency,* 762 F.2d 895, 907 (11th Cir. 1985), *cert. den.,* 474 U.S. 1056, 106 S.Ct. 795,

---

**2.** 21 U.S.C. § 881(a)(7) provides, in pertinent part:

  All real property, including any right, title, and interest [including any leasehold interest] in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or in-

tended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.
21 U.S.C.A. 881(a)(7) (West 1993).

88 L.Ed.2d 772 (1986). The claimant may then avoid forfeiture by proving that the underlying criminal activities were committed or omitted without the claimant's knowledge or consent. 21 U.S.C.A. § 881(a)(7) (West 1993).

### A. Probable Cause to Forfeit Property

■ The United States has clearly demonstrated that it had probable cause to believe that the defendant property was used to facilitate a violation of 21 U.S.C. § 881. *United State's v. One Single Family Residence*, 699 F.Supp. 1531, 1534 (S.D.Fla.1988), *aff'd.*, 894 F.2d 1511 (11th Cir.1990). The Court has found undisputed the following facts: (1) Between April 1990 and September 1990, Luis and his co-conspirators agreed to import 1500 kilograms of cocaine from Aruba to the United States; (2) Luis operated as a broker, putting the confidential informants in touch with the co-conspirators; and (3) Conspiratorial meetings to arrange the importation of 1500 kilograms of cocaine took place at the defendant property. (D.E. # 40, Exhibit B).

In addition, it is undisputed that a series of meetings occurred at the defendant property in furtherance of a conspiracy to import the cocaine, and that several individuals were arrested during a meeting at the property. (Affidavit of Kacerosky, D.E. # 40, Exhibit A). During these meetings, Luis met with the confidential informant at the defendant property. (Deposition of Luis, D.E. # 40, Exhibit F). For the foregoing reasons, this Court concludes that, based on the undisputed facts, the United States has established probable cause for the forfeiture of the defendant property.

### B. Standing to Challenge Forfeiture

■ Larraz, Sr. has demonstrated standing to challenge the forfeiture of the defendant property because he has an ownership interest in the property. The Eleventh Circuit has held that a lienholder qualifies as an owner under § 881. *United States v. Six Parcels of Real Property*, 920 F.2d 798, 799 (11th Cir.1991) (citing *In re Metmor Fin., Inc.*, 819 F.2d 446 (4th Cir.1987)). Specifically, the court concluded that a lienholder has

standing as an "owner" within the meaning of § 881(a), because the term "owner" must be interpreted broadly to include anyone with a legal or equitable interest in the seized property. Larraz became a lienholder when Mendicuti executed a $50,000 mortgage deed on the property in favor of Larraz, Sr. This lien was properly recorded in the Dade County Property Records on September 13, 1990. Therefore, the undisputed facts establish Larraz, Sr.'s standing to file an innocent owner claim to the forfeited property.

### C. Application of the Innocent Owner Test

To prevail on his innocent owner defense, Larraz, Sr. must establish that the underlying criminal activity was committed without his "knowledge *or* consent." 21 U.S.C. § 881(a)(7) (West 1992) (emphasis added). In Larraz, Sr.'s cross-motion for summary judgment, Larraz Sr. argues that he qualifies as an innocent owner because: (1) He did not have any knowledge of Luis' illegal use of the defendant property at the time that Luis engaged in the illegal activity; and (2) If he did have knowledge of any unlawful use of the property, he did not consent to any unlawful use of the property. These arguments require this Court to decide: (1) Whether the innocent owner test should be applied to a claimant's state of mind at the time of the underlying criminal activity, or at the time that the claimant acquires the property; and (2) Whether the issue of consent applies to an analysis of the innocent owner status of a post-illegal act transferee.

The innocent owner test set forth at Section 881(a)(7) has rarely been applied to post-illegal act transferees, as opposed to pre-illegal act owners. There are two primary reasons for this dearth of case law. First, prior to *Buena Vista*, courts adopted a strict interpretation of the relation-back doctrine, and therefore routinely denied the innocent owner claims advanced by post-illegal act transferees. *See United States v. Lake Forrest Circle*, 870 F.2d 586, 594 (11th Cir.1989); *United States v. 2901 S.W. 118th Ct.*, 683 F.Supp. 783, 788 (S.D.Fla.1988); *United States v. One Single Family Residence*, 731 F.Supp. 1563 (S.D.Fla.1990); *United States v. 1977 Porsche Carrera 911*, 748 F.Supp.

1180 (W.D.Tx.1990). In addition, prior to *Buena Vista*, the United States Department of Justice promulgated a policy of not contesting "valid claims filed by innocent bona fide purchasers for value, including creditors with a secured ownership interest in the seized property, acquired after the commission of the offense giving rise to the forfeiture." Cary Copeland, *Department of Justice Relation–Back Doctrine Policy Memorandum*, August 1992, *available in* Westlaw, Texts and Periodicals Database.

Those courts that have examined the innocent owner test, albeit in the context of claims by pre-illegal act owners, are split on the proper interpretation of the statute's express language. One school of thought contends that the term "or" must be read in a disjunctive fashion, holding that the innocent owner test in § 881(a)(7) requires a claimant to demonstrate either a lack of knowledge *or* a lack of consent, but not a lack of both knowledge *and* consent. *See United States v. 141st St. Corp.*, 911 F.2d 870, 878 (2nd Cir.1990) ("Claimant may avoid forfeiture by establishing either that he had no knowledge of the narcotics activity or, if he had knowledge, that he did not consent to it."); *See also United States v. 6109 Grubb Road*, 886 F.2d 618, 626 (3rd Cir.1989); *United States v. 171–02 Liberty Ave.*, 710 F.Supp. 46, 50 (E.D.N.Y.1989). The other school of thought argues that a conjunctive test should be applied to the provision. *See United States v. Lot 111–B*, 902 F.2d 1443, 1445 (9th Cir.1990)

("If the claimant either knew or consented to the illegal activities, the innocent owner defense is unavailable."). *See also United States v. Approximately 4657 Acres,* 730 F.Supp. 423, 427 (S.D.Fla.1989) ("Claimant can succeed on the innocent owner defense under § 881(a)(7) by merely proving that he lacked knowledge of the illegal activity and that he did not consent to the activity.").[3]

### 1. Application of the Innocent Owner Test to Post–Illegal Act Transferees·

In this case, Larraz, Sr. is a post-illegal act transferee, not a pre-illegal act owner. This poses several difficulties for the Court, not only because of the dearth of case law, but also because Congress only intended the innocent owner test to apply to pre-illegal act owners, not post-illegal act transferees.[4]

In *United States v. 92 Buena Vista Ave.*, the Court did not directly address the standard of review that federal courts should apply when analyzing innocent owner claims by post-illegal act transferees. In dicta, however, the Court did suggest that the statutory innocent owner test would have to be modified when applied to post-illegal act transferees. Specifically, the *Buena Vista* Court noted that the claimant argued that both legislative history and common sense suggest that the transferee's lack of knowledge must be established as of the time of the conveyance of the property. *Id.* at ——, 113 S.Ct. at 1137. In addressing this argu-

---

3. A review of Eleventh Circuit case law does not appear to be dispositive of this issue. In 1991, an Eleventh Circuit panel determined that the "or" provision should be interpreted in a conjunctive manner. *United States v. 15603 85th Avenue*, 933 F.2d 976, 981 (11th Cir.1991) ("Innocent owners are those who have no knowledge of the illegal activities and who have not consented to the illegal activities."). A year later, however, a different Eleventh Circuit panel concluded that the innocent owner test should be interpreted in a disjunctive manner. *United States v. 1012 Germantown Road*, 963 F.2d 1496, 1503 (11th Cir.1992) ("Section 881(a)(7) explicitly permits a defense to forfeiture for those owners who can prove that they had no knowledge of illegal activity occurring on their property or who did not consent to that activity: Therefore, an owner can avoid forfeiture by proving either ignorance or non-consent."). In 1993, a third Eleventh Circuit panel returned to the 1991 standard, stating that "Innocent owners are those who have no

knowledge of the illegal activities and who have not consented to the illegal activities." *United States v. 6960 Miraflores Avenue*, 995 F.2d 1558 (11th Cir.1993).

4. In 1984, Congress amended the Drug Control Act by adding the innocent owner provision. At that time, the common law relation-back doctrine, as interpreted by the Supreme Court in *United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1889), and codified in the same 1984 Act, would have negated any innocent owner claims by post-illegal act transferees because title in the defendant property vested in the government at the time of the commission of the underlying criminal activity. Congress could not have anticipated before *Buena Vista* that the Supreme Court would reject the long-standing interpretation of the relation-back doctrine and decide that the innocent owner test may be applied to post-illegal act transferees.

ment, the Court pointed out that, "Moreover, whether or not the text of the statute is sufficiently ambiguous to justify resort to the legislative history, equitable doctrines may foreclose the assertion of an innocent owner defense by a party with guilty knowledge of the tainted character of the property." *Id.*

In a concurring opinion, however, Justice Antonin Scalia suggested that post-illegal act transferees with post-illegal act knowledge of the earlier illegal act should prevail when presenting an innocent owner defense. *Id.* at ——, 113 S.Ct. at 1143 (Scalia, J. concurring). In fact, Justice Scalia stated that such an application of the innocent owner test would not create a severe problem because, "The Government would still be entitled to the property held by the drug dealer and by close friends and relatives who are unable to meet their burden of proof as to ignorance of the illegal act when it occurred." *Id.*

Justice Scalia's argument fails to address the forfeiture evasion incentives that would be created by such an application of the innocent owner test. Criminals would simply keep friends and family "out of the loop" when committing crimes, so that these persons could later serve as post-illegal act transferees without knowledge of the underlying crimes. The Court agrees with Justice Scalia's suggestion that post-illegal act transferees without prior knowledge of the underlying criminal activity are not as culpable as those persons directly involved in criminal activity, but this Court cannot apply the innocent owner test in a manner which would create incentives for friends and family members to cast a blind eye towards criminal activity which would later result in profitable property acquisitions for those same friends and family members.

The Supreme Court's dicta in *Buena Vista* is not the only discussion of the application of the innocent owner test to post-illegal act transferees. In *United States v. 2901 S.W. 118th Ct.*, 683 F.Supp. 783, 788 (S.D.Fla. 1988), the court addressed a factual situation analogous to the present case. On October 28, 1985, Miguel Alvarez appeared before United States Magistrate Judge Charlene H. Sorrentino for the setting of bond. *Id.* at 785. Magistrate Judge Sorrentino set a $50,-000 bond. Later that day, Claimant American Bankers Insurance Company ("Claimant") issued a $50,000 bail bond and received a $50,000 promissory note and mortgage on Alvarez' house. An agent of the Claimant was present at the bond hearing. On April 8, 1986, the United States seized Alvarez' house and Alvarez became a fugitive from justice. The claimant paid the $50,000 bond to the United States and then filed an innocent owner claim to the property.

The Court held that the proper application of the innocent owner test to a subsequent purchaser requires the claimant to "demonstrate both that it lacked actual knowledge" and that "it was reasonably without cause to believe that Alvarez' house was subject to forfeiture." *Id.* at 788–89. The Court did not choose between the disjunctive and conjunctive tests, but instead simply eliminated the consent provision and concentrated on the claimant's actual and constructive knowledge of the underlying criminal activities. *Id.* at 789. *See also United States v. One 1982 28' International Vessel*, 741 F.2d 1319 (11th Cir.1984) (Court held that a claimant invoking the innocent owner test must prove a lack of actual knowledge of the underlying drug transaction at the time of the conveyance, and that he did all that could reasonably be expected to find out about any wrongdoing by the property owner.).[5]

---

5. At least two federal district courts have indirectly addressed the application of the innocent owner test to post-illegal act transferees. *See United States v. 1977 Porsche Carrera 911*, 748 F.Supp. 1180 (W.D.Tex.1990); *United States v. 1973 Rolls Royce*, 817 F.Supp. 571 (E.D.Pa. 1993). In each of these cases, the court applied the innocent owner test set forth in 21 U.S.C. § 881(a)(4)(C). This provision subjects to forfeiture all vehicles used to facilitate the sale of controlled substances, except "to the extent of an interest of an owner, by reason of any act or

omission established by that owner to have been committed or omitted without the knowledge, consent, *or willful blindness* of the owner." 21 U.S.C.A. § 881(a)(4)(C) (West 1993) (emphasis added). Each court examined the claimants' knowledge of the underlying criminal acts at the time of the acquisition of the property interest, not at the time of the criminal acts. *1973 Rolls Royce*, 817 F.Supp. at 579; *1977 Porsche Carrera 911*, 748 F.Supp. at 1185.

In *1977 Porsche Carrera 911*, the court explicitly noted that it must "assess [the claimant's] state

### 2. Application of the Innocent Owner Test to Larraz, Sr.'s Innocent Owner Claim

If this Court followed Eleventh Circuit case law regarding the application of the innocent owner test to pre-illegal act owners, and applied *either* the disjunctive test *or* the conjunctive test by examining consent and/or knowledge, then Larraz, Sr. would automatically be declared an innocent owner. The Court's innocent owner analysis would be a foregone conclusion, because Larraz, Sr. did not and could not possibly have consented to or even known of the underlying illegal acts at the time of the illegal acts. In fact, Larraz, Sr. did not even meet Luis until after Luis had been arrested for committing the underlying criminal acts.

■ In addition, Larraz, Sr. could not possibly have consented to the illegal activities *after* the commission of the illegal acts at the defendant property. Therefore, in accord with *2901 S.W. 118th Ct.*, the Supreme Court's dicta in *Buena Vista*, and this Court's interpretation of 21 U.S.C. § 881(a)(7), this Court concludes that an examination of the issue of consent, either at the time of the illegal act or at the time of the property transfer, is inappropriate in this case. Consent is simply irrelevant when examining the innocent owner claims of post-illegal act transferees.

■ This Court also concludes that it must examine the issue of the claimant's knowledge at the time of the property transfer, not at the time of the commission of the illegal acts. As previously discussed, if the Court examined the claimant's knowledge at the time of the commission of the illegal acts, a "loophole" would be created which would provide criminals with a simple method to conceal and protect their forfeitable property interests. Criminals would be encouraged to keep friends and family "out of the loop" so that they could be used after the commission of illegal acts as "safe" property transferees.

■ In this instance, Larraz, Sr. fails to meet his burden of proving an absence of actual knowledge about Luis' use of the defendant property for criminal purposes at the time that he received a mortgage interest in the property. In fact, this Court does not even need to examine the issue of constructive knowledge, because there is no doubt that Larraz, Sr. had actual knowledge of the illegal activity that occurred on the defendant property. This Court has already found that Larraz, Sr. stipulated at his deposition that he was aware of the government's detailed allegations concerning drug-related meetings at the defendant property during or prior to the September 12, 1990 hearing. Consequently, it is undisputed that Larraz, Sr. possessed actual knowledge of the government's accusations against Luis prior to the transfer of the defendant property. Thus, this Court concludes that Larraz, Sr. is not an innocent owner of the defendant property.[6]

### CONCLUSION

In *Buena Vista*, Justice Anthony Kennedy argues that the Court's decision will encourage drug dealers to shelter their assets from forfeiture by giving them away. *Buena Vista*, —— U.S. at ——, 113 S.Ct. at 1145 (Kennedy, J. dissenting). "The plurality's opinion leaves the forfeiture scheme that is the centerpiece of the nation's drug enforcement

---

of mind upon acceptance of the property. Therefore, the Court must consider all evidence which tends to show knowledge or the absence of knowledge by the claimant as to the illegality of the respondent in terms of its prior use or its status as proceeds." *1977 Porsche Carrera 911*, 748 F.Supp. at 1185. The court pointed out that "even in a case in which a lawyer is truly ignorant of any wrongdoing at the precise moment of acquisition of the property, but subsequently learns within a reasonable period that the property is proceeds or has been used to facilitate a crime, that lawyer should not be considered an innocent owner under the exceptions of section 881." *Id.* at 1188. Section 881(a)(4)(C) does provide a more difficult test for proving innocent

ownership than § 881(a)(7), but neither section expressly addresses the time frame for measuring a post-illegal act transferees state of mind.

6. Larraz, Sr. also argues that Mendicuti's innocent owner status is transferable. In other words, he argues that his property interest is not tainted because he acquired it from an innocent owner. This Court does not need to address this imaginative theory for one simple reason. Mendicuti did not file a claim to the defendant property. Therefore, this Court has never found that she is an innocent owner, and, in fact, she is not legally an innocent owner.

laws in quite a mess." *Id.* This Court's interpretation of the innocent owner provision, however, prevents a claimant from asserting an innocent ownership defense if the claimant had actual knowledge or reasonably should have had knowledge of the underlying criminal activities at the time of the conveyance. This Court simply cannot allow post-illegal act transferees with post-illegal act knowledge of prior illegal activities to take advantage of a linguistic loophole in the innocent owner provision.

Based on an examination of the undisputed facts, the Court concludes that the United States has established probable cause to seize the defendant property, and that Claimant Jose A. Larraz, Sr. is not an innocent owner of the defendant property. Consequently, it is hereby

ORDERED AND ADJUDGED that:

(1). The United States of America's motion for summary judgment against Claimant Jose A. Larraz, Sr. is GRANTED.

(2). Claimant Jose A. Larraz, Sr.'s cross-motion for summary judgment is DENIED.

(3). The Court shall enter judgment in favor of the United States and against Claimant Jose A. Larraz, Sr. by separate order, pursuant to *Fed.R.Civ.P.* 58.

DONE AND ORDERED.