UNITED STATES of America, Plaintiff,

v.

44133 DUCHESS DRIVE, CANTON, WAYNE COUNTY, MICHIGAN, Together With All its Fixtures, Improvements, and Appurtenances, Defendant.

CIV. A. No. 91–70351.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 28, 1994.

Judgment Sept. 29, 1994.

Saul Green U.S. Atty., Detroit, MI, for plaintiff.

Samuel H. Gun, Southfield, MI, for defendants John and Mary Mesko.

Daniel C. Watson, Troy, MI, for claimant Standard Federal.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GADOLA, District Judge.

John and Mary Mesko, husband and wife, acquired certain real estate as their home, by warranty deed executed to them on November 16, 1976. The real property is located at 44134 Duchess Drive, in the Township of Canton, Wayne County, Michigan. The real property is more particularly described as:

> Lot 93, Cavalier Village North, a subdivision as recorded in Liber 95, pages 77 and 78 of plats, Wayne County Records, in the Township of Canton, County of Wayne, State of Michigan.

Standard Federal Bank has an interest in the premises by virtue of a mortgage granted to it by John and Mary Mesko dated November 26, 1976 and recorded December 1, 1976 in Liber 19589, page 173 of Wayne County Records, on which there is a substantial unpaid balance owing.

On January 28, 1991, the government commenced this action by filing a complaint for forfeiture in rem of this real estate, together with all the fixtures, improvements, and appurtenances, under the provisions of 21 U.S.C. § 881(a)(3) and (a)(7). It was the claim of the government that the described real property, together with all its improvements, fixtures, and appurtenances, was subject to forfeiture under, first, 21 U.S.C. § 881(a)(3), as a container used or intended to be used to facilitate a violation of the controlled substance (i.e. narcotics) laws of the United States, and under, second, 21 U.S.C. § 881(a)(7), as real property used to commit or to facilitate the commission of a violation of such drug laws. John Mesko was arrested on December 20, 1990 on a charge of having on that date sold cocaine, and was subsequently convicted on that charge, and

on that same date a search of the home of the Meskos was conducted under a search warrant, and narcotics and narcotics' paraphernalia were found and seized.

On February 15, 1991 John and Mary Mesko filed their answer to the government's complaint for forfeiture, which constituted, in effect, their claim to the property and they thereby became claimants in these forfeiture proceedings. They denied therein that the premises which are the subject of these forfeiture proceedings had ever been used or intended to be used to facilitate a violation of the drug laws.

On April 11, 1991 Mr. & Mrs. Mesko filed their formal "verified claim and notice of challenge" to these forfeiture proceedings.

On April 1, 1991 Standard Federal Bank filed its claim of interest to the premises.

On July 13, 1992 John and Mary Mesko stipulated to a severance of their respective claims from one another, and the court accordingly granted such a severance on July 16, 1992.

On January 24, 1992, the court entered a stipulated order holding that the forfeiture interest of the government was subject and subordinate to the mortgage lien in the real estate held by Standard Federal Bank, as aforesaid.

On May 11, 1993 the government filed its motion for summary judgment regarding the interest of John Mesko in the subject real estate.

Claimants John and Mary Mesko filed their response to the government's motion on June 1, 1993. Mary Mesko also requested summary judgment on her behalf as to her interest in the property. In their response, John and Mary Mesko conceded that John Mesko had been involved in trafficking in narcotics, and that during a search of the residence conducted on December 20, 1990 a quantity of cocaine and certain drug paraphernalia had been discovered. Four ounces of cocaine was discovered on that occasion concealed in an armoire in the master bedroom.

He further conceded, in his deposition taken October 19, 1992, that he had been engaged in such trafficking and had, on December 20, 1990, concealed a quantity of cocaine in an armoire in the parties' bedroom in the residence. Both he and his wife have steadfastly maintained, however, that the cocaine had been placed by him on the premises without Mrs. Mesko's knowledge.

As a result of his illegal activities, John Mesko pled guilty in state court to a charge of delivery of cocaine and was sentenced to serve a term of two and one-half years in state prison, which sentence he is currently serving. The plea of guilty was to a charge that he had sold cocaine to an undercover police officer on December 20, 1990, at a site other than the residence of the parties.

John Mesko, in his response to the government's summary judgment motion, stipulated to the forfeiture of his individual interest in the real estate and he and his wife agreed and conceded that his individual interest should indeed be forfeited under the provisions of 21 U.S.C. § 881(a)(7). John and Mary Mesko denied, however, that their home had been acquired with the proceeds of any drug dealing by John Mesko, and further asserted that Mary Mesko neither had any knowledge of the storage of narcotics and narcotics' paraphernalia in the home, nor had she consented to such use of the residence. The additional question, however, remains as to the exact nature of the individual interest of John Mesko in and to the real estate, and indeed whether any such individual interest exists on his part to be forfeited, and these issues must of necessity also be addressed and resolved in these proceedings.

On June 21, 1993, the court granted summary judgment to the government as to the individual interest of John Mesko only in the residence, thereby forfeiting whatever his individual interest therein may be.

The court denied the motion of Mary Mesko for summary judgment as to her claim, finding that there were genuine issues of material fact regarding her claim to the subject property.

Subsequently, on September 21, 1993, claimants John and Mary Mesko filed a pleading entitled "Claimants' Motion for Summary Judgment or, In The Alternative,

Request for Evidentiary Hearing to Determine Whether Plaintiff's Complaint Against Defendant Property for Forfeiture In Rem Violates the Excessive Fines Clause of the Eighth Amendment."

The government then filed, on November 3, 1993, a "Renewed Motion for Summary Judgment and Opposing Claimants' Motion for Summary Judgment." Essentially, the government again asked for summary judgment since the issue of an excessive fine under the Eighth Amendment to the Constitution had not been raised by the parties or addressed in the earlier summary judgment proceedings.

The court treated, in its order of December 13, 1993, the motion filed by the claimants as a motion for reconsideration of the summary judgment previously entered on June 21, 1993 forfeiting the individual interest of John Mesko, and denying Mary Mesko's motion for summary judgment, and treated the government's renewed motion as a response to that motion. The court ruled, in its order of December 13, 1993, that the forfeiture of the individual interest of John Mesko did not constitute, under the doctrine of *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), an excessive fine as forbidden by that ruling.

The court found that, in light of abundant evidence, from the admissions made by John Mesko, from the concession made by him in his response to the government's motion for summary judgment, and from his deposition testimony given in these proceedings, that he had stored narcotics and narcotics paraphernalia on the subject premises, that he had made arrangements for the sale of cocaine by receiving telephone calls at the residence, and that such activity had gone on for approximately two years and that he had made between $15,000 and $20,000 per year dealing in cocaine. Further, the search of the residence on December 20, 1992 revealed the following items:

A. One (1) black shaving bag containing a quantity of suspected cocaine, approximately four (4) ounces (in excess of 100 grams); packaging materials and a scale seized from the master bedroom.

B. One (1) S & W .357 mag. revolver; one (1) S & W pistol; one (1) Mossberg 12 gauge shotgun; one (1) Winchester 12 gauge shotgun; and one (1) Winchester 7mm mag. bolt action rifle, seized from the master bedroom.

C. Miscellaneous residence papers, financial records and suspected drug ledgers, seized from the master bedroom.

D. Two (2) plastic bags containing suspected marijuana, approximately (2) ounces; one (1) Gem Twin Beam scale; one (1) 125 ml flask; one (1) Ohaus Dial-O-Gram scale; one (1) bag of coin envelopes; and two (2) butane torches, seized from the garage.

E. One (1) plate and spoon containing suspected cocaine residue; one (1) American Industries M–100, .22 rifle; one (1) cobra pocket scanner; and one (1) cellular phone/case, seized from the basement.

F. $257.00 U.S. currency; $4,926.00 U.S. currency; and $2,320.00 U.S. currency.

In light of the above close relationship of the property to the offenses of John Mesko, in that he used the premises for the storage of narcotics and narcotics paraphernalia and to facilitate his business of drug dealing, a forfeiture of the property owned by John and Mary Mesko would not constitute an excessive forfeiture and fine under the doctrine of *Austin v. United States, supra,* and the court so ruled in its order of December 13, 1993. Thus, the court on December 13, 1993 restated and confirmed the earlier ruling that the individual interest of John Mesko in the property, whatever it is, be forfeited to the government. The court therefore reiterated its prior ruling forfeiting the individual interest of John Mesko and granting summary judgment to the government as to John Mesko's claim, finding that forfeiture of his individual interest did not constitute excessive punishment under the Eighth Amendment, and again denied the motion for summary judgment made on behalf of Mary Mesko, inasmuch as there were genuine issues of fact as to her claim to the property. (A copy of the court's order of December 13, 1993 is annexed hereto as Exhibit A.)

Accordingly, a bench trial was subsequently conducted regarding the claim of Mary Mesko to the real estate.

### Findings of Fact

#### A. As to Whether Mary Mesko Has Sustained Her Burden of Proof

■ 21 U.S.C. § 881(d) and (e)(1) provide that the provisions of law relating to the seizure and judicial forfeiture of property for violations of the customs laws are applicable to seizures and forfeitures under section 881. The statute relating to seizures and forfeitures under the customs laws includes 19 U.S.C. § 1615, which provides that the government must first show probable cause for the institution of the forfeiture action, whereupon the burden of proof then lies upon the claimant to establish her right to retain her interest and equity in the property, and thereby defeat the government's action for forfeiture. Accordingly, the burden of proof has been held, in accordance with these statutory provisions, to be the same in forfeiture proceedings under 21 U.S.C. § 881 as that applicable to forfeitures under the customs laws, as determined by 19 U.S.C. § 1615. Under section 1615 the government has the initial burden of showing probable cause for the institution of the suit. Once it is established that there is probable cause to believe the property was involved in criminal wrongdoing, the burden shifts to the claimant to show that the property was not used in violation of the law. *United States v. $83,320 in United States Currency,* 682 F.2d 573, 576–77 (6th Cir.1982). Probable cause may be defined as a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id.* at 577; *United States v. $22,287 in United States Currency,* 520 F.Supp. 675, 678 (E.D.Mich.1981). Once the government has made this showing, the burden shifts to the claimant to, in this case, show that she was an "innocent owner," as will be hereinafter addressed. *United States v. One 1975 Mercedes,* 590 F.2d 196, 199 (6th Cir.1978); *$22,287 in United States Currency,* 520 F.Supp. at 678; *United States v. One 1975 Chevrolet,* 495 F.Supp. 737, 740 (W.D.Mich.1980); *United States v. One 1973 Dodge Van,* 416 F.Supp. 43, 45–46 (E.D.Mich.1976); *United States v. $22,287 in United States Currency,* 709 F.2d 442 (6th Cir.1983).

■ In this action the government has established probable cause for the forfeiture of the interest of Mary Mesko by virtue of the fact that quantities of narcotics, narcotics' paraphernalia, and large amounts of cash were seized in a search of the home on December 20, 1992, as aforesaid, and that her husband transacted his sales of narcotics by use of the telephone at the residence. Further, there was testimony that one sale of cocaine was made by John Mesko in the garage at the subject premises. The burden of proof is therefore borne by Mary Mesko. There is of course no question as to whether there is probable cause as to any interest of her convicted husband in and to the real estate, and he had no defense to the government's claim for forfeiture of whatever interest he is deemed to hold.

■ In order for claimant Mary Mesko to meet her burden of proof and protect her interest in the property from the government's forfeiture action *she must establish,* by a preponderance of the evidence, that the use of the real property to commit or to facilitate the commission of violations of the federal statutes proscribing the sale or distribution of narcotics was "without (her) knowledge or consent." 21 U.S.C. § 881(a)(7).

There was considerable testimony adduced by the government regarding the narcotics distribution activities of John Mesko. Witness Bob Urem testified that he purchased cocaine from John Mesko on various occasions, at his own apartment and at a garage in Westland, and on one occasion at the Mesko residence, and that Mary Mesko was present in his apartment on some occasions when such transactions took place. He said that on one occasion when John Mesko delivered cocaine to him at the Mesko residence, the transaction took place in the garage and Mary Mesko was not present.

Urem's live-in girlfriend, Jean Vandal, testified that on one or two occasions when John Mesko supplied cocaine to Urem, Mary Mesko was present when her husband placed packets of cocaine on the kitchen table for

Urem. Mary Mesko in her testimony denied having ever observed such a transaction.

Witness Kimberly Lulow testified that she purchased cocaine from John Mesko on a regular basis, "maybe a couple times a week." She stated that on two occasions Mary Mesko was in an automobile with John Mesko when Lulow leaned into the Mesko auto, through the window, and extended her hand to John with cash clenched in it, and received a package of cocaine from the clenched hand of Mr. Mesko. She did not know whether this surreptitious exchange was observed by Mrs. Mesko. On another occasion, Mary Mesko accompanied her husband to a cocktail lounge where Lulow encountered them, and on that occasion cocaine was sold to her by John Mesko while Mary was in the restroom. On all the other numerous occasions when she made drug purchases from Mr. Mesko, his wife was not present. Mary Mesko testified that on no occasion was she aware of any cocaine sale to Lulow.

Charlene Swambo testified that she purchased cocaine from John Mesko on twenty to twenty-five occasions, always in the parking lots of bars and bowling alleys. She said that on one occasion Mary Mesko was in John's car but she did not know whether Mary observed the transaction.

Susan Buchanan testified that she purchased drugs from John Mesko "half a dozen times." She said on two occasions she entered the rear seat of John's automobile, while Mary Mesko was in the front passenger seat, and during conversation John extended his left hand, from the driver's seat, to her in the rear seat and thereby passed the packet of drugs to her. She stated that she did not believe that Mary, seated in the front passenger seat, ever saw the delivery of the cocaine. On another occasion Mary was with John in a bar when John delivered cocaine, but again she did not perceive that Mary observed the transfer.

Mary Mesko testified that she had no knowledge that her husband was involved in the distribution of cocaine which led to the search of their residence and his arrest on December 20, 1990. She stated that she had never used drugs and had never observed any sales or deliveries of drugs.

Her husband had called her in 1989 and told her he had been arrested on a prior narcotics sale charge and was in jail. He was subsequently convicted and placed on probation, and she testified that she gave him an ultimatum to the effect that if he was ever involved with narcotics again, she would not tolerate it and would leave him. He is now incarcerated as a result of the December 20, 1990 narcotics sale and search of the home. She stated that she had not filed a divorce action due to the fact that he had suffered a heart attack and stroke in 1990 and was now imprisoned.

John Mesko, in his deposition, testified that his wife had no knowledge of his drug dealing which led to his second arrest on December 20, 1990, and said that his storage of four ounces of cocaine in the armoire in the master bedroom had only been done on the very evening of December 20, 1990, the date on which he was arrested, since he did not have the time on that occasion which he said was a single, isolated occasion, to conceal it elsewhere, as was his usual practice.

In this forfeiture action, there is no claim that the real estate or improvements thereto constitute the proceeds of John Mesko's sales of cocaine, under 21 U.S.C. § 881(a)(6). Rather, it is the government's position, as enunciated in the complaint herein and in the Joint Final Pretrial Order of September 13, 1993, that the home of the claimants was used as a container for the illicit narcotics (21 U.S.C. § 881(a)(3)) or as premises used to commit or to facilitate the commission of a violation of the narcotics laws. (21 U.S.C. § 881(a)(7))

As stated *supra*, in order for Mary Mesko to meet her burden of proof, she must establish that any such activity or use of the real estate by her husband was *"without (her) knowledge or consent."* This is commonly known as the "innocent owner" defense.

Some courts have held that in order to establish this defense, the owner must prove *both* that she *had no knowledge of the illegal activities and also she did not consent there-*

to.- *United States v. Lot 111–B*, 902 F.2d 1443, 1445 (9th Cir.1990); *United States v. One Parcel of Real Estate*, 715 F.Supp. 355, 358–59 (S.D.Fla.1989). The Florida court went even further in holding that in order to establish an owner's lack of consent to the illegal activity, the owner/claimant who asserts the "innocent owner" defense must show that she did all that could reasonably be expected of her to *prevent* the use of the property for illegal purposes.

In *United States v. One Parcel of Property*, 985 F.2d 70, 72 (2d Cir.1993), it was held that while the "innocent owner" defense can be established by proving by a preponderance of the evidence either that she had no knowledge of the narcotics activity or, if she had knowledge, that she did not consent to it, nevertheless to establish lack of consent she must demonstrate that she did all that could be reasonably expected to prevent the illegal activity once she learned of it. These are not, however, the rules in the Sixth Circuit, as will be addressed *infra*.

■■■ It must be emphasized that even if Mary Mesko had knowledge of her husband's drug dealing activities, at locations other than the home, a matter on which there is a conflict in the testimony, and even if it be found that she consented to those activities, committed away from the home, which is at least conceivable given the testimony of her presence at times when cocaine was delivered by her husband, here the question is whether she *had knowledge of or consented to the use of* the *real estate*, i.e. their home, to commit or facilitate the commission of such activities. Under the specific language and the plain meaning of 21 U.S.C. § 881(a)(7), in order for the claimant's interest in the subject real estate to be forfeited it must be *"used*—to commit, or to facilitate the commission of, a violation (of the narcotics laws)," except that the interest of an owner shall not be forfeited "by reason of any act or omission established by that owner to have been committed without the knowledge or consent of that owner." Thus, insofar as these forfeiture proceedings are concerned, the knowledge of, or even the consent to, John Mesko's illicit activities at sites other than the residence would be irrelevant except

to the extent that such knowledge or consent might inferentially be construed as indicating the wife's knowledge of or consent to the use of the residence to facilitate such activities. There must be established a nexus between the property to be forfeited and the criminal activity of which the claimant had knowledge or to which she had consented. *United States v. $22,287 in United States Currency*, 709 F.2d 442, 447 (6th Cir.1983).

Here, there is a dearth of evidence as to whether there was either any knowledge of or consent to, on her part, the use of their residence for such purposes. Even if it be assumed, arguendo, that she had some knowledge of the presence of cocaine and drug paraphernalia in the home, which she strenuously denies, still there is no evidence of her consent thereto, and the only evidence as to consent is her own testimony in which she denies categorically both knowledge of and, even more importantly, consent to such use of the premises.

## B. Whether Mary Mesko Has Proven Her Innocent Ownership

The government's proposed findings of fact ask only that the court find that claimant has not proved an absence of knowledge on her part of her husband's illicit activities. The claimant's proposed findings of fact, on the other hand, ask only that the court find that claimant Mary Mesko had no knowledge of her husband's illicit activities. Neither party's proposed findings of fact ask for a ruling on whether Mary Mesko consented to the use of the home to facilitate her husband's illicit activities. The issue of consent, however, was addressed during trial by the testimony of witnesses and the arguments of counsel.

The court finds that assuming Mary Mesko knew of her husband's activities, and even assuming arguendo that she knew of his illicit use of the home, the issue of whether Mary Mesko consented to her husband's activity in the home is relevant to a resolution of this case.

Section 881(a)(7) provides that

no property (used to facilitate the commission of a drug crime) shall be forfeited

under this paragraph, to the extent of an interest of an owner, by reason of any act . . . established by that owner to have been committed without the knowledge *or con- sent* of that owner.

*Id.* (emphasis added). This portion of the statute is known as the "innocent owner defense," as stated *supra,* in which some courts, as aforesaid, require a claimant to demonstrate that she has done all that reasonably could be expected to prevent the proscribed use of her property. *United States v. 141st Street Corp.,* 911 F.2d 870, 879 (2d Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). In *United States v. Lots 12, 13, 14 and 15, Keeton Heights,* 869 F.2d 942 (6th Cir.1989), however, the Sixth Circuit explicitly rejected this standard as not part of the statute. The Sixth Circuit held that with respect to the issue of consent, it is *not* necessary for a claimant invoking the innocent owner defense to prove that she did everything necessary to prevent the illegal use of the property.

[T]he statute . . . imposes no requirement that a person who claims the status of an "innocent owner" establish that he has done all that he could reasonably be expected to do to prevent the proscribed use of his property. It is enough, under the statute, that the owner establish that the proscribed act was committed "without the knowledge *or* consent of that owner."

*Id.* at 947. The claimant therefore may prevail if she proves by a preponderance of the evidence that her husband acted without her consent. *Id.* at 948.

Section 881(a)(7) allows for forfeiture of real property "which is used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title." Thus, the issue is whether Mary Mesko had knowledge of *or* consented to the use of her property to commit or to facilitate her husband's crimes.

The court has exhaustively reviewed the evidence introduced at trial and the record of the case and has, as well, evaluated the credibility, demeanor, and interests of the witnesses who testified.

The court finds that more likely than not Mary Mesko had some knowledge, or at least suspicion of, her husband's activities to which she may even have willfully blinded herself. However, the court finds that claimant Mary Mesko did not know that her husband had used their property to commit, or to facilitate the commission of, his crimes. Furthermore, the court finds that Mary Mesko has proven by a preponderance of the evidence that at no time did she consent to her husband's illicit activities or, more importantly, to his use of their property to facilitate those crimes.

Claimant testified that she had told her husband that she would divorce him if he continued to engage in drug dealing. Defendant John Mesko and others testified that the drug transactions never took place at the house and that they generally were conducted in a surreptitious manner so as to evade detection by Mary Mesko or anyone else. There was trial testimony of a drug sale on the premises, but it was conducted in the garage and out of the presence of Mrs. Mesko. There were two witnesses who testified that Mary Mesko was present with her husband when drugs were clearly in her view; this, however, did not occur at the Mesko's home but at another residence. Mary Mesko denies that she had any knowledge of her husband's drug activities during the time period relevant to his 1992 conviction and she denies that she was ever present where drugs were clearly in view. In any event, even assuming the witnesses' testimony is true, it does not support a finding that Mary Mesko had any knowledge that her home, that is, the property located at 44133 Duchess Drive, was used to commit or facilitate illegal drug transactions, and there is no evidence whatsoever that she ever consented to such use of her home. The testimony of Mary Mesko did, in the court's estimation, when weighed and considered with all the other evidence herein, establish by a preponderance of the evidence that she did not at any time consent to the illicit use of the property by her husband.

The court finds that Mary Mesko has proven by a preponderance of the evidence that she neither had knowledge that her home was being used to commit, or to facilitate the commission of, the crimes of which her hus-

band was convicted, nor did she consent to any such illicit use. Therefore, the interest of claimant Mary Mesko in the property located at 44133 Duchess Drive, Canton, Wayne County, Michigan shall not be forfeited to the United States of America.

## C. Mary Mesko's Interest in the Property

■ The court must also determine what constitutes Mary Mesko's interest in the property under state law principles of real property, and also what constitutes John Mesko's individual interest therein. It is appropriate for the court to apply state property law to determine the interest of an innocent owner in a federal forfeiture case. *United States v. Certain Real Property at 2525 Leroy Lane*, 910 F.2d 343, 349 (6th Cir.1990) (followed in *United States v. 750 East Shore Drive*, 800 F.Supp. 547 (E.D.Mich.1992) (Gadola, J.)), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991).

■ The parties agree that the property is held by John and Mary Mesko in a tenancy by the entireties.[1]

> In a true tenancy by the entireties, each spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship. When real property is so held as tenants by the entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held. Neither the husband nor the wife has an individual, separate interest in entireties property, and neither has an interest in such property which may be conveyed, encumbered or alienated.

*Leroy Lane*, 910 F.2d at 346.

■ In *Leroy Lane*, Mitchell Marks and his wife owned real estate as tenants by the entireties. Mitchell Marks was convicted of distribution of cocaine and in an action for forfeiture of the real estate, on the basis that it was used by him to facilitate the commission of the drug offense under 21 U.S.C.

§ 853 and 21 U.S.C. § 881(a)(7). The Judgment of Conviction of the husband forfeited his interest in the property. The parties stipulated that the wife, Leah Marks, was an "innocent owner." By agreement of the parties, the property was sold and the proceeds held in escrow to await disposition of the forfeiture proceedings regarding the wife's interest. The fact that the property had been, by agreement of the parties sold, and that the forfeiture proceedings therefore related to disposition of a cash fund rather than to real estate is a situation which, however, markedly distinguishes the *Leroy Lane* case from the facts in *United States v. One Single Family Residence*, 894 F.2d 1511 (11th Cir. 1990), a case in which the facts are virtually identical to those in this matter, and the holding in which was cited with approval by the Sixth Circuit in *Leroy Lane*. *Id.* at 351. The following language of the Sixth Circuit in *Leroy Lane* is controlling in this matter and is dispositive of the issue of the interests held by both the government and Mrs. Mesko in this case:

> At the time of the illegal acts which rendered the real property subject to forfeiture, Leah Marks and her husband owned the real property as tenants by the entirety under Michigan law. Tenants by the entirety, who must be husband and wife, hold under a single title with right of survivorship. *Matter of Grosslight*, 757 F.2d 773 (6th Cir.1985); *Sanford v. Bertrau*, 204 Mich. 244, 169 NW 880 (1918). Neither husband nor wife acting alone can alienate any interest in the property, nor can the creditors of one levy upon the property. *Matter of Grosslight*, 757 F.2d at 773.

> A husband and wife holding by the entireties do not hold as joint tenants.

> • • • • •

> A Michigan court in *Rogers v. Rogers*, 136 Mich.App. 125, 356 N.W.2d 288, 292–93 (1984) described the entireties estate as follows:

> the parties must have an equal interest in the entire property; and (5) the parties must have the same right to use the entire property. *Morgan v. Cincinnati Ins. Co.*, 411 Mich. 267, 285, 307 N.W.2d 53 (1981).

---

1. A tenancy by the entireties is created if five elements exist: (1) the parties holding title to the land must be married; (2) the parties must both hold title to the land; (3) the parties must have received the land by the same conveyance; (4)

In Michigan real property law, tenancies by the entireties enjoy an ancient and hoary tradition. The usual and durable method for a husband and wife to hold real estate has been as tenants by the entireties. The classic basis for a tenancy by the entireties was the concept that "the husband and wife are but one person in the law". In a true tenancy by the entireties each spouse is considered to own the whole and therefore is entitled to the enjoyment of the entirety and to survivorship. When real property is so held as tenants by the entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held. Neither the husband nor the wife has an individual separate interest in entireties property, and neither has an interest in such property which may be conveyed, encumbered or alienated.

One incident of an estate by the entireties is that the survivor, whether husband or wife is entitled to the whole and such right cannot be defeated by a conveyance by one spouse to a stranger. Traditionally, tenancies by the entireties could only be created by a written instrument of conveyance, which produced unity of persons, time, title, interest and possession.

Thus, under Michigan law, the wife had not only an indivisible interest in the entireties property, but also a survivorship interest which would entitle her to sole ownership of the property upon her husband's death. *Rogers,* 356 N.W.2d at 293. Her survivorship interest constitutes a legal interest in the real property which was vested in her "rather than the defendant" for purposes of 21 U.S.C. § 853(n)(6)(A). Claimant wife has standing under that section to contest the criminal forfeiture of the real property in question.

⸱   ⸱   ⸱   ⸱   ⸱

We decline to formulate a uniform federal rule of decision and conclude that it is appropriate to refer to state law in determining the nature of the property interest claimed by a third party in forfeiture proceedings under 21 U.S.C. §§ 853(n) and 881(a)(7).

⸱   ⸱   ⸱   ⸱   ⸱

The Michigan law previously discussed indicates that Leah Marks has an indivisible interest in the whole property held by the entireties. Under Michigan law, the individual interest of a tenant by the entireties is the functional equivalent of a life estate with a right of survivorship. The survivorship interest is in the nature of a remainder triggered by the death of either spouse, and, necessarily, the survivorship of the other spouse. The occurrence of the contingency converts the survivor's life estate to fee simple absolute. Consequently, only if Mrs. Marks were to predecease Mr. Marks would the latter realize his survivorship interest.

⸱   ⸱   ⸱   ⸱   ⸱

In light of the parties' stipulation to treat the cash proceeds of the forced sale as though they retained the same qualities as entireties property, the Government may properly acquire only the interest which Mr. Marks held as cotenant by the entireties. However, the Government cannot occupy the position of Mr. Marks in the entireties estate, since the estate is founded on marital union and the government obviously cannot assume the role of spouse to Mrs. Marks. By acquiring Mr. Marks's interest in the entireties estate the Government is precluded from obtaining Mr. Marks's interest in the property unless and until Mrs. Marks predeceases her husband or the entireties estate is otherwise terminated by dissolution of the marriage or joint conveyance. However, we do not agree with the district court's finding that the entire property vested in Mrs. Marks by reason of the forfeiture. Instead, we conclude that the interest acquired by the Government is most analogous to the position occupied by a judgment creditor of one spouse under Michigan law.

The exact nature of the parties' rights would be more readily determinable if the real property here had not been sold. Mrs. Marks would be entitled to live in the house during the duration of the tenancy,

and the Government would have a lien on the property to the extent of the value of Mr. Marks's interest which would prevent Mrs. Marks from obtaining the entire proceeds upon the sale of the property. Here, the real property has been sold, and the district court must determine on remand how to manage the fund of money in such a way as will protect the Government's interest as a judgment creditor, while at the same time permitting Mrs. Marks the use of that property consistent with her interest as a tenant by the entireties.

*Leroy Lane,* 910 F.2d at 346–52, *Id.*

During the pendency of the appeal in *Leroy Lane,* the Eleventh Circuit ruled in *United States v. One Single Family Residence,* 894 F.2d 1511 (11th Cir.1990), as the Sixth Circuit noted with approval in its opinion. *Leroy Lane,* 910 F.2d at 351.

The Sixth Circuit stated that the Eleventh Circuit had determined in the above-cited decision that under Florida law:

> the interest of the innocent spouse in entireties property was not subject to forfeiture by reason of the criminal activity of her husband, and that federal law as contained in 21 U.S.C. § 883(a)(7) did not operate to preempt state law in that regard. The court stated, *Id.* at 1516, that "using Florida law to define what property interest each of the Aguileras has, we find that *no interest exists in the subject property which can be forfeited to the government at the present time.*" The Eleventh Circuit went on to note, 894 F.2d at 1516, n. 6:

> > Nothing would prevent the government from attempting to execute or levy on its interest should the entireties estate be altered by changes in circumstances or by court order. That is, we do not rule out the possibility that if the United States filed a lis pendens against the property, the government might acquire in a later forfeiture proceeding Mr. Aguilera's interest in the property should he divorce his spouse, should Mrs. Aguilera predecease him, or should their interests be transmitted into some divisible form by their actions or by law. In such case, their interests would be-

> > come distinct and separable so that forfeiture of his interest in the property would not affect her rights. 894 F.2d at 1516, n. 6.

*Id.* at 351. The Sixth Circuit went on to state that

> [o]ur opinion in the present case is consistent with the conclusions reached by the Eleventh Circuit. The distinguishing feature in the case before the Eleventh Circuit is that the real property in question had not been sold, and therefore whatever future interest the government might have in the property would be protected by the filing of a lis pendens. Here, however, the real property has been converted to a fund of money which could easily be dissipated. Therefore, it becomes necessary in this case to hold the money in escrow, thereby establishing in effect a lis pendens in order to protect the Government's interests in anticipation of the occurrence of some event which may result in the vesting of the Government's interest in the proceeds of the property.

While we leave the determination of the precise scope of the Government's interest under Michigan law to the district court, we note some cases which may be instructive. As previously noted, the judgment creditors of one spouse may not levy against entireties property through a forced sale. *Matter of Grosslight,* 757 F.2d at 773. The creditors of the husband alone cannot reach the husband's share of proceeds from foreclosure sale of the entireties real estate. *Muskegon Lumber & Fuel Co. v. Johnson,* 338 Mich. 655, 62 N.W.2d 619 (1954), or rents from property held by the entireties, *Peoples State Bank of Pontiac v. Reckling,* 252 Mich. 383, 233 N.W. 353 (1930); *Battjes Fuel & Bldg. Material Co. v. Milanowski,* 236 Mich. 622, 211 N.W. 27 (1926). However, although Michigan law precludes a forced sale of property to enforce a judgment lien, we have found no cases which would preclude the attachment of a creditor's lien on one spouse's interest which could be satisfied to the extent of that spouse's interest upon the termination of the entireties estate. Each tenant by the entirety is entitled to

share equally in the rents and profits derived from the entireties property. Thus, it may be that Mrs. Marks would be entitled to half of the interest from the fund of money. Consistent with the prohibition against unilateral alienation of the entireties property by one tenant, Mrs. Marks would not be able to reach her share of the principle of the fund unless or until the entireties estate terminated through the death of Mr. Marks, upon which she would be entitled to the entire fund, or through other termination of the entireties estate, at which time Mrs. Marks would be entitled to one half of the fund. The Government would be entitled to the entire fund if Mrs. Marks predeceased Mr. Marks, and to one half of the fund upon some other termination of the estate such as a termination of the marriage or an agreement between Mrs. Marks and the Government to terminate the tenancy.

We likewise leave to the discretion of the district court the determination of how to best manage and invest the fund in such a way as to protect the interests of both Mrs. Marks and the Government.

Of course the parties are entitled to compromise and settle their respective interests by agreeing among themselves upon a division of the fund. Because Mr. Marks's interest in the property has been forfeited to the Government, the interested parties for purposes of settlement are the Government and Ms. Marks. The court would commend to the parties the services of its settlement office under the supervision of Mr. Robert Rack, who may be able to assist the parties in effectuating a fair settlement and a fair division of the fund of money in question.

For the foregoing reasons, the judgment of the district court is hereby vacated, and this case is remanded to the district court for further proceedings consistent with this opinion.

*Id.* at 352.

In a later decision of the Sixth Circuit, following remand, the court again reiterated that "[t]he government's interest comes into being only when the tenancy by the entireties is destroyed either by death, divorce, or operation of Michigan law. When the tenancy by the entireties is destroyed, the government gets whatever [the husband] possesses after the entireties estate is destroyed." *United States v. Certain Real Property at 2525 Leroy Lane,* 972 F.2d 136, 138 (6th Cir.1992) ("*Leroy Lane II*"); *cf. United States v. Property in Name of Alexander Morio Toki,* 779 F.Supp. 1272 (D.Hawaii 1991) (under Hawaii property law, government had fewer rights to entireties estate than those cited in *Leroy Lane*). *But see United States v. Parcel of Real Property Known as 1500 Lincoln Avenue,* 949 F.2d 73 (3d Cir.1991) (court criticized Eleventh Circuit's approach; found that government deserved immediate forfeiture of guilty spouse's interest in the entireties property so long as innocent spouse's exclusive use of entire home was maintained). Following remand, the district court awarded all of the proceeds from the sale of the house to the wife who was an innocent owner. This decision was based upon the state court divorce decree which had given the entire estate to the wife. In *Leroy Lane II,* the court again remanded the case to the district court for a determination of the fairness of the entry of the divorce decree. *Id.* at 138–39.

The court's opinion in the present case is governed by the ruling in *Leroy Lane* and *Leroy Lane II,* which in turn adopted and approved the ruling in *One Single Family Residence,* from the Eleventh Circuit. In accordance with those controlling decisions, "no interest exists in the subject property which can be forfeited at the present time" in that Mrs. Mesko is an "innocent owner" whose interest cannot be forfeited, and with the property being held as entireties property.

If at the time John Mesko committed his violations of the narcotics laws, and used the family home to commit those violations, Mrs. Mesko both had knowledge of those activities and consented thereto, then the entireties interests of both Mr. & Mrs. Mesko would be subject to forfeiture. The fact that the government proceeded against Mr. Mesko and proved that his interest was subject to forfeiture prior to attempting to forfeit his wife's interest would not render the government's

**504**

forfeiture proceedings defective, since the government's interest in the premises would relate back to the time of the commission of the crime by Mr. Mesko, consented to by Mrs. Mesko. *Leroy Lane,* 910 F.2d at 349; 21 U.S.C. § 853(c).

In this case, however, Mrs. Mesko has established that she is an "innocent owner" whose interest is not subject to forfeiture, and the government is therefore in the position of a creditor of Mr. Mesko only, seeking to reach his individual interest in a tenancy by the entireties, which cannot be accomplished by a creditor of only one of the spouses holding property as tenants by the entireties.

### Conclusions of Law

Mary Mesko has sustained her burden of proof, by establishing that she is an innocent owner who neither had knowledge of nor consented to her husbands's illicit use of the real estate to facilitate his commission of narcotics trafficking offenses.

Judgment will therefore enter in her favor, and she will retain her interest in the subject real estate as a tenant by the entireties.

Insofar as the interest of John Mesko is concerned, there being no interest in the entireties property which the government can acquire by forfeiture at this time, the summary judgment hereinbefore entered purporting to forfeit his interest as a tenant by the entireties must be set aside, and John and Mary Mesko therefore shall continue to hold the subject premises as tenants by the entireties, with full rights of survivorship. This decision does not rule out the possibility that the government might file a *lis pendens* or seek the attachment of a creditor's lien against the property and might then acquire the interest of John Mesko in the property at some future date if Mary Mesko should predecease him, or should there be a divorce, or should their interests be transmitted into some divisible form by their actions or by law. In such case, their interests would become distinct and separable so that forfeiture of his interest in the property would not affect her rights.

**SO ORDERED.**

### JUDGMENT

Sept. 29, 1994

Judgment is hereby entered herein for claimant Mary Mesko, and the action of the United States of America for forfeiture of her interest in the premises known as 44133 Duchess Drive, Canton, Wayne County, Michigan, together with all its fixtures, improvements and appurtenances, more particularly described as:

Lot 93, Cavalier Village North, a subdivision as recorded in Liber 95, pages 77 and 78 of plats, Wayne County Records, in the Township of Canton, County of Wayne, State of Michigan.

is hereby **DISMISSED.**

The summary judgment hereinbefore entered on June 21, 1993 forfeiting the interest of John Mesko in and to the aforementioned premises is hereby set aside, he having no individual interest in said premises subject to forfeiture.

Claimants John Mesko and Mary Mesko, his wife, are decreed to be the owners of the aforementioned premises as tenants by the entireties and this action by the United States of America seeking forfeiture of said premises is accordingly **DISMISSED.**